EARL NICHOLS, *Adm'r. v.* RALEIGH WYOMING MINING COMPANY

(No. 7503)

Submitted April 19, 1933.   Decided May 9, 1933.

632

*Brown, Jackson & Knight,* and *File, Goldsmith & Scherer,* for plaintiff in error.

*Clay S. Crouse* and *John Q. Hutchinson,* for defendant in error.

MAXWELL, PRESIDENT:

Raleigh-Wyoming Mining Company prosecutes this writ to a judgment for $6,500.00 rendered on a verdict against it in favor of Earl Nichols, as administrator of Kathleen Nichols, deceased, for her wrongful death.

Kathleen Nichols was fatally injured about 8:15 p. m., June 3, 1930, when she was crushed between two uncoupled loaded coal cars while attempting to pass between them on the way to her home in defendant's coal camp. On a former trial of the case the court directed a verdict for defendant. This Court reversed that judgment in *Nichols* v. *Raleigh-Wyoming Coal Co.,* 112 W. Va. 85, 163 S. E. 767, and remanded the case for a new trial.

Defendant, a coal mining corporation, had been conducting operations at Edwight, Raleigh County, for several years prior to the date of the accident resulting in the death of Mrs. Nichols. The tipple, sidetracks and miners' camp, called Stringtown, were located across Hazy Creek a short distance above the company store, postoffice, theater, school, and churches. The house in which plaintiff and his family lived was about 200 feet from the tipple, which could be distinctly seen from his front porch. Defendant maintained for its employees a foot bridge across Hazy Creek just above the company store in order to avoid the inconvenience of traveling around a long curve in the road which extended from Stringtown along the edge of the town to the lower end thereof. The path from this bridge, in the direction of Stringtown, crossed the tracks in front of the supply house, approximately half way between the bridge and the tipple, and joined the said road in front of the third house below plaintiff's. The path was much used because it afforded a shorter route and was in better condition than the road. There is much evidence on the part of the plaintiff that miners and their families residing in Stringtown were in the habit of crossing the tracks at any point where they could find open-

ings between coal cars, and that when there were no openings they would crawl under cars or climb over couplings.

For about two years before the tragedy, defendant had followed a definite routine in operating the tipple. After a car had been loaded, a gong, which could be heard several hundred yards, was sounded, and the tipple stopped. The car, under the supervision of a brakeman, was dropped by gravity into position on one of the tracks. Three 250 watt lights on the tipple lighted the tracks for 200 feet or more in the direction of the loaded cars.

On the evening of the accident, Mrs. Nichols, accompanied by her four-year old child, went from her home by way of the path and footbridge to Edwight, to get her other two children, aged six and eight, who were attending a show. She was gone no longer than ten or fifteen minutes. Returning at dusk by way of the footbridge, she did not cross at the supply house, but continued up the tracks, which was lined with loaded cars, until within 140 feet of the tipple, where she attempted to cross through a three-foot opening between two cars. Her two youngest children, preceding her, got safely through the opening, but she was caught between the couplings of the cars. Witnesses for plaintiff testify that the crossing at the supply house was blocked when Mrs. Nichols returned, but this is denied by several witnesses for defendant. The brakeman moving the cars down the track from the tipple testified that the last car he had placed before the accident had failed to roll far enough to be coupled to the car ahead, and therefore he "bumped" it with the next car in order to close the opening. It was in this opening and at the instant when the car was bumped that Mrs. Nichols was crushed. The brakeman testified that he could not see Mrs. Nichols from his position at the brake on the rear of the car.

The evidence is hopelessly conflicting as to the condition of the road between Stringtown and the main part of Edwight and the general use thereof by pedestrians; as to whether defendant provided other safe, suitable and convenient ways of travel for the people at Stringtown; and how and where the tracks were generally crossed.

L. T. Putman, general superintendent of defendant, testified that there was no path at the point where Mrs. Nichols

undertook to cross the tracks, but admitted knowing that pedestrians sometimes crossed there; that prior to June 3, 1930. he had twice instructed a peace officer of the company to notify every family in Stringtown to keep off the tracks; that he had maintained notices along the tracks for more than a year prior to the accident warning pedestrians of danger; and that every time he saw anyone on the tracks near the tipple he "ordered them off". Jean Monico, mining engineer for defendant, testified that nine warning notices had been posted between the tipple and the bridge prior to 1928 and that they were still posted at the time of the accident; that there was no path from the supply house to the tipple; and that it was the same distance to Mrs. Nichols' home the way she attempted to return as it would have been had she crossed into the road in front of the supply house. Jess Wills, peace officer for defendant, testified that before the accident he twice notified every family in Stringtown to keep their children off the tracks "where they were loading coal"; but admitted that he could not recall the names of any persons he so notified or whether he notified Mrs. Nichols. Two witnesses for defendant testified that Wills twice notified them to keep their children off the tracks near the tipple. Three witnesses for defendant who worked in and about the tipple testified that they repeatedly told pedestrians who came near the tipple to stay off the tracks. Five witnesses for plaintiff, upon being recalled, stated that they had lived in Stringtown prior to the accident but had never been told by anyone to keep off the sidetracks.

We stated on prior review of this case that it involved matters proper for jury consideration. But that of course means that jury determination of the issues of fact involved must be under proper instructions of the trial court. Defendant excepted to the refusal of several instructions offered by it, and to the court's giving to the jury plaintiff's instruction No. 1.

Plaintiff's said instruction is as follows:

"The court instructs the jury that if you believe from the preponderance of the evidence in this case that Kathleen Nichols lived in a portion of defendant's mining town with her husband and children in

a house of defendant fronting toward the sidetracks of defendant below defendant's tipple; that Earl Nichols was the husband of Kathleen Nichols and worked for defendant in and about its business of mining and shipping coal while he resided with his family in said house; that miners and their families like situated as was said Earl Nichols and his family for a long time before the death of Kathleen Nichols used the side-tracks of defendant below its tipple and at and near where Kathleen Nichols was killed as a pass-way in going to and from the public buildings of Edwight and that such way was a convenient way lighted in part at night and no other lighted or convenient way was provided whereby such miners and their families could go on foot to the public buildings of said town and the state highway from where they lived in the portion of said town called Stringtown or West Edwight and that said miners so situated and their families for a long time prior to June 3, 1930, had used such sidetracks as passways when blocked by loaded cars by crawling under or over said cars and, when openings had been left between loaded cars, by going through said openings whereever such openings were found, and measures were not taken by the defendant to stop such practice and such measures made known to the family of Kathleen Nichols, then under such circumstances it was the duty of the said defendant to use ordinary and reasonable care not to injure or kill her when she approached and attempted to pass through the opening where she lost her life, and if you further believe that the employees of the defendant did not use ordinary and reasonable care in and about the operation of its loaded cars on its sidetrack to prevent injuring the decedent, Kathleen Nichols, and that such failure to use such ordinary and reasonable care was the proximate cause of the death of the said Kathleen Nichols, then you should find for the plaintiff and assess such damages as you shall deem fair and just, not exceeding ten thousand dollars.''

We are opinion that part of the instruction which reads ''and that such way was a convenient way lighted in part at night and no other lighted or convenient way was provided'' is erroneous. The route that Mrs. Nichols and her children were attempting to travel on their return home on

the night of the fatality was in no sense a "way". If she was excusable in attempting to cross the tracks where she was killed, it was solely because the usual route, crossing the tracks at the supply house, was blocked by coal cars, and because of known custom, if such there was, of miners and their families living in Stringtown to cross the tracks whereever they could find openings between the railroad cars. But there is another and far more serious error in the instruction. Though the instruction is binding in form, it ignores the defense of contributory negligence.

In countering this criticism of the instruction, relied on by defendant as prejudicial error, the plaintiff insists that the phrase used in the latter part of the instruction "that such failure (of the defendant) to use such ordinary and reasonable care was the proximate cause of the death of the said Kathleen Nichols" by its very terminology negatives contributory negligence, and therefore it was not error for the instruction not specifically to negative contributory negligence of the plaintiff. Reliance is had on the case of *Vargo* v. *Cochrane,* 108 W. Va. 607, 152 S. E. 8, 9, and *Roberts* v. *B. & O. Ry. Co.,* 72 W. Va. 370, 78 S. E. 357. In the *Roberts* case a binding instruction that says nothing about contributory negligence was sustained. It required the jury to find that the negligence of the defendant was the proximate cause of the injury and in another instruction the meaning of probable cause was made clear to the jury. In the *Vargo* case one of the plaintiff's instructions directed the jury to find for the plaintiff if they believed the defendant was guilty of negligence which was the proximate cause of the injury. The child for whose wrongful death the action was prosecuted was seven years of age. Grave doubt was entertained whether it could be guilty of contributory negligence. In the opinion we said: "Assuming, for the moment, that the child was capable of contributory negligence, the plaintiff's instruction No. 3, which permits the jury to find for him upon the hypothesis that the negligence of the defendant was the proximate cause of the injury, does not ignore the defense of contributory negligence." Having found in that case that the defendant was guilty of negligence as a matter of law, and, entertaining grave doubt as to whether the deceased child

could have been guilty of contributory negligence, there was employed a liberal interpretation of the challenged instruction. We do not think, however, that as a general rule the phrase "proximate cause", used in a plaintiff's instruction in a damage suit, should be considered as negativing contributory negligence on the part of the plaintiff. Another case, not cited on .brief, wherein this matter is discussed is *Adams* v. *Gasoline & Oil Co.*, 109 W. Va. 631, 156 S. E. 63. There we held that though the plaintiff's instructions did not specifically negative contributory negligence on the part of plaintiff's decedent, but did require the jury to find that the defendant's alleged negligence was the proximate cause of the fatality in order to base a verdict for the plaintiff, they were not prejudicially erroneous because (1) the said decedent was a young child, and it was very doubtful if contributory negligence could be imputed to it; and (2) because an instruction was given to the jury clearly defining the meaning of the phrase "proximate cause".

The conditions which obtained in the three cases just discussed afforded basis for the determination that the phrase "proximate cause", as· used in instructions of the plaintiffs therein, sufficiently negatived contributory negligence on the part of the plaintiffs. Such conditions do not obtain in the case at bar. In the first place we do not have here an instruction given to the jury even attempting to define proximate cause. And, the deceased was a mature woman, who had for months lived within sight of the place where she was killed, and who was presumed to know the manner of causing loaded cars to drift by gravity from the tipple to the sidetracks. The facts are such that there should be no relaxing of the general rule that in an action for damages for personal injury, where there is defense of contributory negligence, a binding instruction for the plaintiff is prejudicially erroneous if it does not specifically negative contributory negligence on the part of the plaintiff. *Blackwood* v. *Traction Co.*, 96 W. Va. 1, 122 S. E. 359. For a listing of numerous other similar cases see *Adams* v. *Gasoline & Oil Co., supra,* at page 641.

For the general proposition that it is prejudicial error to give a binding instruction on behalf of the plaintiff which ignores a material defense, and that the error is not cured by

other instructions, see *Stafford* v. *Railway Co.*, 111 W. Va. 249, 161 S. E. 447, and *Shaver* v. *Coal Co.*, 108 W. Va. 365, 151 S. E. 326.

As to the defendant's instructions we are of opinion that points covered by refused instructions are substantially covered by the ones that were given.

For the error specified we reverse the judgment of the trial court, set aside the verdict, and remand the case for a new trial.

*Reversed and remanded.*