## HOFFMAN *v.* BURKHEAD.

1. AUTOMOBILES—BLINKING RED REAR LIGHTS—REAR-APPROACHING CARS.

   The blinking of rear red lights on a moving motor vehicle, even though not directional, should, in the absence of specific statutory provision requiring more, put a rear-approaching motorist on warning that the front motorist was about to do something and of the rear motorist's consequent need to proceed with caution (CLS 1952, § 257.648).

2. SAME—TURNING FROM DIRECT LINE—OBSERVATION—SIGNALS.

   A motorist who has made his observation as to whether a turn from the direct line can be made in safety and given a signal, both as required by statute, need not fix his attention solely to traffic approaching from the rear on pain of being held guilty of contributory negligence as a matter of law, especially where there is traffic approaching from the opposite direction (CLS 1952, § 257.648).

3. COURTS—APPLICATION OF DOCTRINES AND RULES OF LAW.

   The application of doctrines and rules of law to new cases need not necessarily await, or depend upon, pat factual identity.

4. TRIAL—MOTION FOR DIRECTED VERDICT AT CLOSE OF PLAINTIFF'S PROOFS—EVIDENCE.

   The evidence must be viewed favorably to plaintiff in determining whether or not defendant's motion for directed verdict at the close of plaintiff's proofs should be granted.

5. AUTOMOBILES — LEFT TURN — OBSERVATION — SIGNALS — REAR-APPROACHING TRAFFIC.

   A motorist would not necessarily be guilty of contributory negligence as a matter of law by making a left turn after having

REFERENCES FOR POINTS IN HEADNOTES

[1] 5A Am Jur, Automobiles and Highway Traffic § 347.
[2, 5, 6] 5A Am Jur, Automobiles and Highway Traffic § 348.
[4, 8, 11] 5A Am Jur, Automobiles and Highway Traffic § 1024; 53 Am Jur, Trial § 393.
[7] 5A Am Jur, Automobiles and Highway Traffic § 681.
[9] 5A Am Jur, Automobiles and Highway Traffic § 1028.
[10] 5A Am Jur, Automobiles and Highway Traffic §§ 205, 300.

made observation that a vehicle was approaching from the rear, where he reasonably concluded he could do so in safety and gave an intelligible signal or warning to another driver approaching from the rear (CLS 1952, § 257.648).

6. Same—Left Turn—Rear-Approaching Cars.

The reasonableness of a motorist's conclusion that he could make a left turn in safety is not to be measured solely by the fact that there was a collision by a rear-approaching vehicle, provided the front motorist had also given his required signal or warning, since regard must be had for the overtaking motorist's possible negligence or reciprocal responsibilities (CLS 1952, § 257.648).

7. Negligence—Contributory Negligence—Reciprocal Duties.

The question of contributory negligence is usually judged, not alone by what the plaintiff did or did not do, but also by the conjoining facts pertaining to what, in the way of legal duty, the plaintiff had a right to expect of the defendant.

8. Automobiles—Motion for Directed Verdict at Close of Plaintiff's Proofs—Negative Testimony—Signals.

Testimony of plaintiff, left-turning motorist, that he neither saw nor heard any car-warning signal of any kind from defendant's rear-approaching ambulance which collided with plaintiff's car should be taken as evidence of the fact that the ambulance was not within view when plaintiff looked and had not given any warning signal of its approach, when determining order to be given on defendant's motion for directed verdict at close of plaintiff's proofs (CLS 1952, § 257.648).

9. Same—Left Turn—Rear-Approaching Ambulance—Contributory Negligence—Proximate Cause—Evidence—Question for Trier of Facts.

Testimony of plaintiff that he had made observation to the rear and had seen no traffic approaching within a quarter of a mile, had blinked his 2 rear red lights, reduced his speed, and left front wheel was a foot or so over the center of the highway at time defendant's ambulance overtook and collided with him as he was about to make a left turn, presented a question for the jury as to whether or not plaintiff's actions or failures to act were a contributing or proximate cause of his injury (CLS 1948, § 257.648).

10. Same—Ambulances.

The fact that defendant's vehicle was an ambulance engaged in plying its trade does not alone and of itself serve automatically

to relieve its driver from proceeding with care (CLS 1956, §§ 257.603, 257.632, 257.653, subd b).

11. APPEAL AND ERROR—MOTION FOR DIRECTED VERDICT—EVIDENCE—AUTOMOBILES—LEFT TURN—REAR-APPROACHING AMBULANCE.

The favorable view to plaintiff motorist, that must be taken of evidence when a defendant presents a motion for directed verdict at the close of plaintiff's proofs, includes what plaintiff might reasonably have expected from the defendant whose ambulance approached from the rear and collided with plaintiff about to make a left turn after having made observation that he could do so and had given a warning signal (CLS 1952, § 257.648).

Appeal from Eaton; McDonald (Archie D.), J. Submitted November 26, 1957. (Docket No. 102, Calendar No. 47,385.) Decided April 15, 1958.

Case by Earl C. Hoffman against M. D. Burkhead for personal injuries and property damage arising from collision of motor vehicles. At close of plaintiff's proofs, verdict directed and judgment entered for defendant. Plaintiff appeals. Reversed and remanded.

*John Wendell Bird,* for plaintiff.

*Robert C. Carr,* for defendant.

VOELKER, J. This case involves an approach-from-the-rear daylight collision with plaintiff's car by the defendant's ambulance, both going in the same direction. At the time of the accident the defendant had overtaken and was attempting to pass the plaintiff on his left. Plaintiff testified he was slowed almost to a stop with his left front wheel a foot or so over the center of the highway, about to make a left turn; that he was still signalling and watching the driveway and traffic approaching him from the other direction; and that up to the time of

the accident he neither saw nor heard any car or warning signal of any kind from the rear. The trial court's opinion succinctly presents additional facts and poses our legal problem, and we quote it:

"Suit was brought by plaintiff against the defendant as a result of [a collision between?] an automobile owned and driven by the plaintiff and the ambulance owned and driven by defendant.

"The collision occurred March 16, 1953, on US–27, northeast of Charlotte, opposite the Martin Motor Sales on the north side of US–27, about a mile northeast of Charlotte.

"The plaintiff was driving in a northeasterly direction toward Lansing, and was in process of making a left-hand turn into the Martin Motor Sales. The defendant was also going in a northeasterly direction on US–27.

"The case was heard before a jury on May 16, 1955.

"At the time of the accident, defendant Burkhead was in the process of passing the plaintiff, driving the ambulance, with a patient, taking the patient to a Lansing hospital.

"The collision occurred opposite the southwest driveway into the Martin Motor Sales.

"The plaintiff testified that he drove out US–27 to the place of the accident, coming from the city of Charlotte and that he reduced his speed preparatory to making a left-hand turn by 'short jerks on his pedal.' He stated on direct examination that before starting to make the turn, he looked for traffic in front of him and back of him, looking back by looking through the rearview mirror, and that the road was all clear within seeing distance, which was a distance of several hundred feet, or a quarter of a mile, and that he didn't see any car approaching, and that he never saw it before the impact, which occurred, while the turn was being made.

"The plaintiff's witness Preston stated that there was straight vision southwest from the scene of the

accident of very close to a mile, with no obstructions nor hills nor valleys.

"On cross-examination, the plaintiff said he did not look back while making the turn, but was observing the car ahead of him and watching for southbound traffic, and further stated that the defendant was the one who should be looking out for 'me,' meaning the plaintiff.

"With reference to signals, the plaintiff said he blinked the stoplights on his car, which blinked when he put on the brakes, showing 2 red lights.

"When it was agreed by plaintiff's counsel that all testimony regarding negligence was in, a motion for a directed verdict was made by the defendant on the ground that the plaintiff was guilty of contributory negligence, and had not given adequate signal before turning.

"The motion for directed verdict was granted.

"A later motion was made for new trial on the ground that the court erred in granting said motion.

"Two questions are presented for consideration: First, where there is nothing to interfere with the view of the highway, and the plaintiff failed to look, or looked and did not see what was to be seen, plaintiff cannot recover. *Molda* v. *Clark,* 236 Mich 277; *Molby* v. *Detroit United Railway,* 221 Mich 419; *Jones* v. *Armstrong,* 231 Mich 637, discuss the principle involved.

"The court is of the opinion that these cases are controlling of the issue, and that under the testimony the plaintiff was guilty of contributory negligence.

"Second: Did the plaintiff give an adequate signal?

"It will be noted that the statute in question requires that the plaintiff first see that he can make the turn in safety, and then give an intelligible signal or warning to another driver approaching from the rear.

"Under the facts in this case, it would appear that the plaintiff, on his own testimony, did not first see that he could make the turn in safety. This being

true, it is not necessary for the court to determine whether or not he gave an intelligible signal by stepping on his brakes."

At the time of the accident one of the applicable statutes (since amended* largely by adding lettered paragraph [c] pertaining to signal devices on certain commercial vehicles) provided as follows (CLS 1952, § 257.648 [Stat Ann 1952 Rev § 9.2348]):

"(a) The driver of any vehicle upon a highway before starting, stopping or turning from a direct line shall first see that such movement can be made in safety and shall give a signal as required in this section.

"(b) The signal herein required shall be given either by means of the hand and arm in the manner herein specified, or by a mechanical or electrical signal device which conveys an intelligible signal or warning to another driver approaching from the rear.

"Whenever the signal is given by means of the hand and arm, the driver shall indicate his intention to start, stop, or turn by extending the hand and arm horizontally from and beyond the left side of the vehicle."

It will be noted that the statute then as now provides that *before* turning the driver shall do 2 things: first see that the turn can be made in safety and thereupon give a signal as required by the statute. We further note that by giving a single signal a driver may thus indicate his intention of doing 1 of 3 things: either starting, stopping or turning. Such a driver may give this single signal by 2 alternative means: 1, by holding his hand or arm straight out the left side of the car or, 2, by giving a mechanical or electrical signal which "conveys an intelligible signal or warning to another driver approaching from the rear."

---

* By PA 1954, No 181.—Reporter.

The statute does not prescribe or define the precise kind of warning or indication that the electrical signal must give, and the proofs here show that upon braking 2 red stop lights blinked at the rear of the plaintiff's car, which lights did not however indicate the direction of any proposed turn. In our view if the holding out of a hand or an arm is sufficient to give adequate statutory warning to "another driver approaching from the rear" of the signalling driver's intention to do 1 of the 3 things just indicated above, then we think the blinking of rear red lights, even though not directional, should, in the absence of specific statutory provision requiring more, be equally efficacious to put a rear-approaching driver on warning that something was up and of his consequent need to proceed with caution.

Nor do we understand that once the turning lead driver has made his required observation and signal that either the statute or our decided cases require that he must thereafter also keep his eyes glued to the rear. Presumably on a busy highway an occasional car might just happen along from the opposite direction, and there was proof offered here that such was the case.

The trial court below grounded its decision on a legal doctrine which of late years has had quite an expanding vogue in this State: that if the plaintiff fails to look or looking fails to see what is there to be seen, he is guilty of contributory negligence as a matter of law. Now there are undeniable occasions where there is room for the application of this doctrine, but we think the situation presented in this case at this stage is not one of them. None of the 3 cases cited by the court for this doctrine involved our factual situation or the construction of the cited statute. The *Molby Case* was a collision between a truck and a streetcar; the *Molda* and *Jones Cases* were pedestrian cases, with a vigorous dissent in the

latter. We recognize, of course, that the application of doctrines and rules of law to new cases need not necessarily await or depend upon pat factual identity. That way lies judicial stagnation. The reasons we think the doctrine of these cases does not apply here cut deeper than that. We shall now proceed to suggest some of them.

First, to hold categorically at that stage of the case that the plaintiff was wrong and should be peremptorily turned out of court for failing to see "what was there to be seen" was to infer something not then in proof, namely: that at the time the plaintiff looked and signalled, the ambulance was in fact there behind him to be seen. We find no proof on this score in this record. Therefore not only is this an inference unsupported by proof, but one which is also favorable to the defendant and unfavorable to the plaintiff. If one must speculate and indulge in inferences on this score it would seem equally if not more logical to infer that after the plaintiff took his look to the rear and saw nothing, the ambulance with its emergency burden of pain approached swiftly—and possibly heedlessly—from the rear. At a high rate of speed it would only have taken a matter of seconds for defendant's ambulance to have borne down upon the plaintiff. In any case such an inference would at least have been more in harmony with the plaintiff's testimony and the rule of favorable view. If a man says he looked and saw nothing it is just barely possible that there was nothing to see.

Second, a favorable view of the plaintiff's testimony tends also to indicate that there might still have been adequate room for the ambulance to have safely passed him, and that plaintiff's claimed actions or failures may not necessarily have contributed to or have been the proximate cause of the accident. (*Gleason* v. *Lowe,* 232 Mich 300.) Moreover, if the plaintiff's car was situated as he testified,

ready to turn, it would appear that the doctrine applied by the court might all the more apply in reverse: that the plaintiff's car was there by the defendant to be seen.

Third, according to the wording of the statute itself (and contrary to certain inferences, at least, in the court's opinion) even if the plaintiff driver *had* seen another motor vehicle approaching from his rear, he would still not necessarily have been barred from negotiating his left turn provided that (1) he reasonably concluded he could do so in safety and (2) gave "an intelligible signal or warning to another driver approaching from the rear." The very wording of the just-quoted portion of the statute seems plainly to contemplate that under proper circumstances a left turn may still be made although there are in fact other vehicles approaching from the rear and the turning driver has seen them. Such a view also tends to accord with the pressing realities of present-day traffic.

Nor do we think that the reasonableness of the front driver's conclusion that he could make his left turn in safety should be measured solely by the fact that there was a collision, provided he also timely gave his required signal or warning. To hold thus is to test the plaintiff's actions without any regard to the defendant's possible negligence or reciprocal responsibilities. Under such a rule in some situations the more negligent the court-ignored conduct of the defendant might be, the more "unreasonable" the action of the plaintiff would consequently appear. This is to safely isolate the plaintiff from a jury trial in a good many negligence cases.

If there was competent testimony that the plaintiff did observe and did timely signal, then reciprocal driver duties became squarely involved. We cannot in these situations isolate and examine the plaintiff's conduct in a vacuum, like a beetle under a glass;

his conduct must be examined and weighed in conjunction with what corresponding conduct the plaintiff might reasonably have expected on the part of the defendant. As Mr. Justice BLACK recently so well said in his well-reasoned opinion in *Weller* v. *Mancha,* 351 Mich 50, 67, quoting approvingly from earlier but recent cases:

" 'As we have previously seen (*Clark* v. *Shefferly,* 346 Mich 332) the question of contributory negligence is usually judged, not alone by what the plaintiff did or did not do, but also by the conjoining facts pertaining to what in the way of legal duty the plaintiff had a right to expect of the defendant.' "

The court's ruling below appears to overlook any consideration of "what in the way of legal duty the plaintiff had a right to expect of the defendant"— and thus without proof to have tacitly resolved any questions thereon in favor of the defendant. What are these possible duties? We can suggest a few of them obliquely without citing a lot of statutes. Had the defendant performed or breached his own statutory or other duties in the driving of an emergency vehicle? Or in attempting to overtake and pass a car proceeding in the same direction? Should he have in this situation instead passed on the right? The only testimony on these and other possible questions before the court below was largely negative but indicates that if the approaching and passing defendant gave any warning signals whatever—of which there was no proof—this plaintiff did not see or hear them. Should not his testimony—at least at this stage of the case—have warranted instead the possible inference that no warning signal indeed was given? Under the doctrine of favorable view we think it should have.

In this connection we may add that on this record, as it stands, the mere fact that defendant's vehicle

appears to have been an ambulance engaged in plying its trade does not alone and of itself serve automatically to relieve its driver from proceeding with care. See *City of Kalamazoo* v. *Priest,* 331 Mich 43 and *Eggebeen* v. *Red Top Cab Company of Grand Rapids,* 334 Mich 490. See, also, CLS 1956, §§ 257.-603, 257.632 and 257.653, subd b (Stat Ann 1952 Rev §§ 9.2303, 9.2332 and 9.2353, subd b).

Under the rule of favorable view we think that the fair inferences of the plaintiff's testimony here —even accepting the trial court's account of that testimony in its opinion—indicate that he at least *claimed* that he made a timely observation to the rear, and further that by timely blinking his rear red lights he also signalled an intention at least to *do something.* He says he wanted to turn, determined that he could turn in safety, and signalled and got in a position to turn. In any case, since earlier he was already moving, then he scarcely could have been signalling an intention to start moving. There were accordingly but 2 alternatives: either he was signalling to the rear his intention to stop or he was signally his intention to turn. If he did this then at least it would seem that on favorable view a fair inference was raised—especially in the absence of any defense testimony—that he had performed his statutory duty and that any approaching driver was put on warning. Especially must this be so in the absence of any proof as to what if anything the defendant himself did by way of warning or otherwise.

Let us pursue this further. Let us assume that proofs in the case below had proceeded, and the defendant had in due course offered favorable testimony as to his own actions or signals, say, or on the plaintiff's lack of observation, or his lack of timely or adequate signalling—or indeed that the plaintiff had done anything at all. On the state of

the record before us we rather think, without deciding, that there would still have been a question of fact on these issues for the jury to decide. If so, then we are all the more at loss—especially when the factor of favorable view is added to the picture— to penetrate the logic of holding that where the defense has not been heard from at all that these same questions somehow become magically transformed solely into questions of law.

As we recently said in *Shaw* v. *Bashore,* 353 Mich 31, in commenting on the proper province of a trial court upon motions for peremptory verdict, the rule of favorable view means what it says, and it quite definitely does not mean that in applying it the court may instead take the dimmest or most unfavorable possible view. Rather it means that upon such motions "all facts and circumstances and reasonable inferences must be viewed in the light most favorable to the plaintiff." This includes what he might reasonably have expected of the defendant. In all fairness we should add that the able trial court here reached its decision well over 2 years ago. A lot of water has gone over the legal dam since then, some of it bearing especially on this point. We choose to think that the learned judge below might well have reached a different result had he had the benefit of some of those interim decisions.

In any case the action of the court below must under these circumstances and for these reasons be reversed and the cause remanded for a new trial, with costs.

DETHMERS, C. J., and CARR. KELLY, SMITH, BLACK, and EDWARDS, JJ., concurred.

KAVANAGH, J., took no part in the decision of this case.