Causbia Adkins

*v.*

Paul Minton and Logan Baking Corporation,
*a corporation*

(No. 12547)

Submitted September 21, 1966. Decided November 29, 1966.

230

*Valentine & Valentine, Mark T. Valentine, John C. Valentine,* for appellants.

*Preiser & Greene, W. Dale Greene,* for appellee.

BERRY, JUDGE:

This is a civil action instituted by the plaintiff, Causbia Adkins, in the Circuit Court of Logan County, West Virginia, against Paul Minton and the Logan Baking Corporation, a Corporation, for damages for personal injuries received by the plaintiff in an automobile accident which occurred on Route 10 in Logan County on March 12, 1962. The jury returned a verdict in favor of the plaintiff in the amount of $15,000, and the trial court entered judgment thereon June 26, 1964, and on May 29, 1965, entered the final order overruling

the motion of the defendants to set aside the verdict and to enter judgment for the defendants in accordance with the motion for a directed verdict made at the conclusion of all the evidence, and in the alternative to set aside the verdict and judgment and to grant the defendants a new trial. On January 24, 1966, an appeal and supersedeas were granted to said judgment and the case was submitted to this Court on arguments and briefs September 21, 1966.

Both vehicles involved in this collision were panel body trucks and the collision occurred when the plaintiff attempted to turn to the left of the road while defendant was passing. The vehicle driven by the plaintiff who was a woman of small stature, her height being 4 feet 11¾ inches, was a 1952 Ford truck equipped with bucket seats. The truck was used by her to pick up dry cleaning and laundry for a dry cleaning company. The passing vehicle, which was driven by Paul Minton, one of the defendants, was a 1960 Dodge panel body truck used for the delivery of bakery products. Both trucks were proceeding toward Logan and the wreck occurred at a point on the highway which is bounded on one side by the Guyan River and on the other by the Chesapeake and Ohio Railway tracks in a stretch known as the "Three Mile Curve". The weather condition on the day of the wreck was clear and the pavement dry and in this stretch of the highway, as is shown by the record, it was possible to see in both directions for several hundred feet. The defendant Minton unquestionably saw the plaintiff ahead of him when he decided to pass, but she did not see him behind her until he hit her when she was making the turn across the road to the left berm, the reason being the relatively simple one, according to her own admission and confirmed by other witnesses, that she had no rear view mirrors on the truck, and that she was not aware of the defendant's truck on the highway.

There is a direct conflict in the testimony with regard to the giving or not giving of signals. The plain-

tiff stated that defendant Minton did not sound his horn before attempting to pass, but that she gave a signal for a left turn for 150 to 200 feet, a distance of more than 100 feet as required by the statute. The defendant Minton testified that plaintiff gave no signal but that he sounded his horn on three or four occasions while he was relatively close to the plaintiff's truck, moved to the left side, and blew it again when she "lurched" to the left side also. There were no witnesses to the accident other than the plaintiff and the defendant Minton, who stated that just about the time the front of his truck was even with the rear of the plaintiff's truck, she "shot across" in front of him into the passing lane he was in, and in an effort to avoid hitting the plaintiff's truck he tried to cut back over to the right, at which time the plaintiff's truck was angled across the left, or passing, lane. Despite this effort to avoid the collision, the left front of defendant's truck struck the left rear of the plaintiff's truck, apparently giving it extra momentum, so that it swerved diagonally off the road and hit a tree with considerable force. The plaintiff was rendered unconscious and received a broken leg as a result of the impact.

The accident occurred about 4 o'clock in the afternoon and an ambulance arrived about fifteen or twenty minutes later and transported the plaintiff to a hospital. She had apparently regained consciousness before the ambulance left with her.

Immediately before the accident, the plaintiff was intending to make her last pick-up for the day and the customer lived in one of the houses across the river from the highway near a dilapidated bridge known as "Wellman Bridge". It was her custom to park the truck she was driving in a wide place on the highway berm from which the bridge crossed the river. She was thus in the process of attempting to park the truck on the left hand side of the highway berm when the accident occurred.

The accident was investigated promptly by Trooper Robert Sturms of the West Virgina State Police, and he confirmed the fact that the plaintiff's truck had no rear view mirror either in the truck or on the side. His investigation disclosed that the driver of the defendant's truck left a right tire skid mark which measured 90 feet, and a left tire skid mark of 20 feet.

All witnesses, with the exception of one, introduced by both the defendant and the plaintiff, testified that the left window glass in the door of the truck on the driver's side of plaintiff's truck was up immediately after the accident. This one witness, Jane Gore, stated she did not remember whether the window was up or down. Trooper Sturms and the defendant Minton testified positively that the window on the left side of plaintiff's truck was completely up. In seeming contradiction, the plaintiff said it was down as she drove down the road just before turning. However, it should be remembered that she said that after she gave the signal she put both hands on the steering wheel to turn left and she was immediately knocked unconscious as a result of the impact. Therefore, it would not seem possible, under the circumstances, for her to have been able to roll the window up in the position it was found when the defendant went to her truck and the state trooper later examined it. If the window was not down she could not have given the arm signal. Defendant Minton's evidence was that no electrical signals on the plaintiff's truck operated just before the crash.

There is no evidence that either truck was speeding, as the plaintiff stated she slowed down in order to make the left turn, and the defendant's truck was equipped with a governor restricting his speed to 55 miles per hour. The undisputed testimony is that the defendant's truck was being driven at a speed no greater than 45 miles per hour and possibly as low as 35 miles per hour. The area where the collision occurred was one not requiring reduced speed.

The question involved in the case presented here has never been passed on by this Court; that is, what are the respective duties of the drivers of overtaken and overtaking vehicles.

The issues in the case here are whether the plaintiff or the defendant was guilty of negligence, and if both were guilty, what was the proximate cause of the accident. It is the defendant's contention that the action on the part of the plaintiff amounted to contributory negligence as a matter of law and bars recovery, that the defendants' motion for a directed verdict in their favor should have been granted by the trial court, and that the trial court also erred in giving Instructions 1A and 6 offered by the plaintiff because they did not properly state the law considering the facts presented in the case.

The trial court was of the opinion that the decisions in the cases of *Leftwich v. Wesco Corp.,* 146 W.Va. 196, 119 S.E.2d 401, and *Richmond v. Campbell,* 148 W.Va. 595, 136 S.E.2d 877, were controlling in the disposition of the case at bar.

It is true that in both the *Leftwich* and *Richmond* cases this Court held that the driver of a vehicle in front of another vehicle following it was not required to ascertain whether another vehicle was following unless the driver of the front vehicle was made aware of it by some signal or otherwise. However, it was made clear in the *Richmond* case that notwithstanding this fact the driver of a forward vehicle can not make sudden unexpected stops that may imperil any vehicle approaching from the rear and must in all cases comply with the law with regard to giving stopping signals or turning signals. In other words, the driver of a foward vehicle, although not required to ascertain whether or not a vehicle is following, must still comply with the law pertaining to signals and stopping or turning. Then, too, both the *Leftwich* and *Richmond* cases are authority only for cases in which a forward

vehicle is struck from the rear by a following vehicle in the same lane of travel. The case at bar involves a following vehicle attempting to pass a forward vehicle making a left turn or left diagonal movement into the passing lane. This is an entirely different situation from that involved in the *Leftwich* and *Richmond* cases.

It has been held that the making of a left turn into a passing lane or across oncoming traffic is the most dangerous movement a vehicle can make on the highway, and the driver of a vehicle making such movement must ascertain if it can be done with safety. *Brown v. Perkins,* 144 So. 176. The statute in West Virginia, Code, 17C-8-8, as amended, provides that not only should an appropriate signal be given by a person making a turning movement but also that any such turning movement made by a vehicle from a direct course upon a roadway shall not be done unless and until such movement can be made with reasonable safety. In other words, the statute provides an additional requirement imposed upon the driver of a forward vehicle attempting to make a left turn into a passing lane other than merely giving the proper signal. A correlative statute requires the driver of a vehicle overtaking and passing another vehicle proceeding in the same direction to give an audible signal and pass to the left thereof at a safe distance. Code, 17C-7-3(a), as amended.

Statutory law also requires every motor vehicle so constructed or loaded as to obstruct the driver's view to the rear to be equipped with a mirror so located as to allow the driver of any vehicle to be able to view the highway from the rear of such vehicle for a distance of 200 feet. Code, 17C-15-35, as amended. It is uncontradicted that the plaintiff's truck was not equipped with any such mirror that would allow a view to the rear of her truck. This violation of the statute constitutes a jury question with regard to contributory negligence on the part of the plaintiff. *Spurlin v. Nardo,*

145 W.Va. 408, 114 S.E.2d 913; *Costello v. City of Wheeling*, 145 W.Va. 455, 117 S.E.2d 513. See 27 A.L.R.2d Anno., page 1040 et seq. See also 8 Am. Jur.2d, Automobiles and Highway Traffic, §709.

The defendant Minton testified that he sounded the horn on his truck several times before attempting to pass the plaintiff's truck, although the plaintiff testified there was no horn signal given. Since there is a conflict, this is a question for the jury as to whether the defendant was guilty of prima facie negligence in failing to sound his horn to give an audible signal of his intent to pass plaintiff's truck. *Spurlin v. Nardo, supra; Davis v. Pugh*, 133 W. Va. 569, 57 S. E. 2d 9.

The plaintiff testified that she gave a left turn signal by arm or hand for the distance required by the statute, Code, 17C-8-8, as amended, although witnesses stated the window on the driver's side of plaintiff's truck was up when she was found in an unconscious condition after the accident. The defendant testified that plaintiff gave no signal to make a left turn at any time. Notwithstanding the evidence in connection with this matter, it was agreed that this question was one for jury determination because of the presence of conflicting evidence. *Spurlin v. Nardo, supra; Davis v. Pugh, supra.*

By the plaintiff's own admission she failed to comply with an important additional requirement of the statute providing that one intending to make a left turn must ascertain if it can be done with reasonable safety. Code, 17C-8-8, as amended. This is true because the plaintiff stated that she was not aware of any vehicle behind her. Under the provisions of the statute she should have ascertained if the turn could be made with safety and if she looked and saw the defendant's truck attempting to pass her truck before she made the turn and still turned into the left or passing lane she would be guilty of negligence as a matter of law. *Brown v. Perkins, supra; Firemen's*

*Underwriters, Etc. v. Nieman,* 263 Wisc. 188, 56 N. W. 2d 816; *Flanagan v. Slattery,* 74 S.D. 92, 49 N.W.2d 27; *Petersen v. Schneider,* 153 Neb. 815, 46 N.W.2d 355. If the plaintiff looked to the rear of her truck when defendant was attempting to pass and did not see the defendant's truck, she did not look effectively; and this effective observation being a requisite in such cases, she would still be guilty of negligence as a matter of law. *Wallace v. Fowler,* 36 Atl.2d 691; *Smith v. Penn Line Service, Inc.,* 145 W. Va. 1, 19, 113 S.E.2d 505; *Brake v. Cerra,* 145 W. Va. 76, 85, 112 S.E.2d 466.

A different situation would be presented, as indicated by the authorities in such cases, if the plaintiff had looked effectively and had seen the approaching truck behind her before the actual attempt to pass was being executed and if she had then made a judgment that she could make a left turn across the passing lane with safety, but had been struck by the passing vehicle, it would appear to be a question for jury determination with regard to the negligence of the defendant and contributory negligence of the plaintiff. 3 Blashfield Automobile Law and Practice, Facts of Liability, § 118.6; *Petersen v. Schneider, supra; Caines v. Wofsey,* 117 Conn. 671, 167 A. 733; *Rea v. State Farm Mut. Auto Ins. Co.,* (La.) 149 So. 2d 136; *Hoffman v. Burkhead,* 353 Mich. 47, 90 N.W.2d 498; *Miller v. Southern Asphalt Co.,* 314 Pa. 289, 171 A. 472; *Kaufman v. Sickman,* 116 Wash. 672, 200 P. 481.

It was held in the case of *Overton v. Fields,* 145 W. Va. 797, 117 S.E.2d 598, which involved a passing situation, that the driver of a vehicle overtaking another vehicle proceeding in the same direction on a public highway is required only to give an audible signal and exercise ordinary care under the circumstances, and he is not required to ascertain whether the driver of the vehicle in front has heard the audible signal, and he is not required to exercise a *high* degree of care to ascertain if the forward vehicle can be passed in safety. If the driver of a vehicle approaching an-

other vehicle in front runs into the rear of the front vehicle without using due care, an entirely different situation is presented. *Fisher v. Hawkeye Stages*, 37 N.W.2d 284. If the facts and circumstances do not require the driver of the vehicle to ascertain whether a left turn can be made with safety, such as controlled or directed traffic, and he is struck by a passing vehicle, such driver can not be charged with negligence. See *Boots v. Potter*, 266 P.2d 176.

If the undisputed facts and circumstances show, as they do in the case at bar, that the plaintiff did not use reasonable care to ascertain if it was safe to make a left turn when the defendant's truck was attempting to pass her truck on the highway, such action would constitute the proximate cause of the accident, which is always necessary in such cases to determine the matter of liability, and where such facts control the situation and are not disputed and are such that reasonable minds can draw but one conclusion from them, the question of contributory negligence barring recovery is one of law for the court. *Workman v. Wynne*, 142 W. Va. 135, 94 S.E. 2d 665; *Brake v. Cerra, supra; Graham v. Crist*, 146 W. Va. 156, 118 S.E.2d 640; *Lewis v. McIntire*, 150 W. Va. 117, 144 S.E.2d 319.

The defendant objected to the giving of Instruction 1A as offered by the plaintiff on three grounds, one of which was the failure to negative contributory negligence. This Instruction was modified by the trial court by deleting two grounds but leaving the contributory negligence ground and then was given to the jury over the blanket objection of the attorney for the defendants to the "giving of the instruction as amended". The concluding paragraph of the Instruction as given reads as follows: "Therefore, if you find from a preponderance of the evidence that the defendant Minton did not give an audible signal or did not pass the truck driven by the plaintiff, Causbia Adkins, at a safe distance and that such failure constituted negligence which proximately caused injury to the plaintiff

*who was herself free of negligence,* then your verdict *must* be for the plaintiff in an amount not to exceed the amount sued for." [Emphasis supplied]

It will be noted that Instruction 1A is a binding instruction and contains the language "* * * the plaintiff who was herself free of negligence * * * ". The obvious intention of the defendants to object to this phrase was unfortunately clouded by the use of the word "defendant" in the objection where "plaintiff" should have been used, and this led to an argument advanced by the plaintiff in her brief to the effect that no proper specific objection was ever made, either in the first set of specific objections or in the second blanket objection to the instruction "as amended". However, a few sentences after the erroneous use of the party designations the defendants in effect repeated the contributory negligence objection without mentioning the exact language, and we feel that defendants did effectively object specifically to the quoted language. This then necessitates the answering of two questions: 1. Does the phrase sufficiently negative contributory negligence? 2. If it does not, did the defendants properly object when they assigned no ground in the blanket objection to the amended or modified Instruction 1A?

It has been repeatedly held that ordinarily when contributory negligence of the plaintiff is relied on as a defense it is prejudicial error to give an instruction which directs the jury to find for the plaintiff if the jury believes certain facts but does not specifically negative contributory negligence on the part of the plaintiff. *Nichols v. Raleigh Wyoming Mining Co.,* 113 W. Va. 631, 169 S.E. 451; *Bragg v. Whitten Transfer Co.,* 125 W. Va. 722, 26 S.E.2d 217; *Payne v. Virginian Railway Co.,* 131 W. Va. 767, 51 S.E.2d 514; *McMicken v. Province,* 141 W. Va. 273, 285, 90 S.E.2d 348, 59 A.L.R.2d 470. The *Bragg* case clearly indicates that the giving of modified Instruction 1A in the case at bar was prejudicial error, as it was contended in

that case, the *Bragg* case, that the defense of contributory negligence was negatived in an instruction given which contained the following language: " * * * if you believe the plaintiff himself without negligence * * * ". It was held that this language, which is almost identical to that used in the instant case but comes closer to being a proper statement than that appearing in the present case, did not properly negative contributory negligence on the part of the plaintiff and constituted prejudicial error. The syllabus in the *Bragg* case in connection with this question reads as follows: " ' Ordinarily, when contributory negligence of the plaintiff is relied on as a defense, it is prejudicial error to give for the plaintiff an instruction which directs the jury to find for the plaintiff if certain recited facts are believed by the jury from the evidence, but which instruction does not specifically negative contributory negligence on the part of the plaintiff. The error involved in the giving of such erroneous instruction is not corrected by the giving to the jury of other instructions covering contributory negligence. *Nichols v. Mining Co.,* 113 W. Va. 631, Pt. 1, Syl., 169 S.E. 451 ' ".

It is contended by the attorney for the plaintiff that the giving of Instruction 1A, as amended, was not properly objected to by the defendant in order to save the point in this Court. This contention is without merit because the record clearly shows that the attorney for the defendants, after preliminary specific objection, objected to the Instruction given "as amended", and it has been held that it is not necessary to continually repeat the grounds of objection to instructions where the subsequent instruction embodies the same principle. *Baltimore & Ohio Railway Co. v. Lee,* 106 Va. 32, 55 S.E. 1.

It is also the contention of the defendant that the giving of Instruction 6 offered by the plaintiff, as modified, constituted reversible error. This Instruction, which was properly objected to, reads as follows:

"The Court instructs the jury that: 1. The burden of proving contributory negligence is upon the defendants Paul Minton & Logan Bakery and, further, 2. The plaintiff Causbia Adkins is presumed to have been exercising due care and to have been free of contributory negligence until proven otherwise by the defendants Paul Minton & Logan Bakery by a preponderance of the evidence". This Instruction would tell the jury that the plaintiff is presumed to have been free of contributory negligence unless it was proved otherwise by the defendants. The law is that the jury may consider *all* the evidence offered by both the plaintiff and defendant in determining whether or not the plaintiff was guilty of contributory negligence. *Barrickman v. Marion Oil Co.*, 45 W. Va. 634, 646, 32 S.E. 327; 44 L.R.A. 92; *Melton v. C. & C. Railway Co.*, 71 W. Va. 701, 78 S.E. 369; *Leftwich v. Wesco Corp., supra; Jackson v. Cockill,* 149 W. Va. 78, 138 S.E.2d 710.

Although the burden of proving contributory negligence rests upon the defendant, it may be proved by the plaintiff's evidence, or by all the evidence introduced in the trial and by all the circumstances considered together. Such statements as to how it may be proved should have been contained in Instruction 6 in order to make it applicable thereto; and under the facts and circumstances in this case such an instruction as given constitutes reversible error. This matter is adequately covered in the sixth syllabus point of the *Leftwich* case wherein it is stated: "Contributory negligence on the part of the plaintiff is an affirmative defense. There is a presumption of ordinary care in favor of the plaintiff, and where the defendant relies upon contributory negligence, the burden of proof rests upon the defendant to show such negligence unless it is disclosed by the plaintiff's evidence or may be fairly inferred by all of the evidence and circumstances surrounding the case."

For the reasons enunciated in this opinion, the judgment of the Circuit Court of Logan County is reversed, the verdict is set aside and a new trial is awarded to the defendants.

*Judgment reversed;*
*verdict set aside;*
*new trial awarded.*