## CHARLESTON.

Tug River Lumber Company *et als. v.* Charles
H. Smithey *et als.*

(No. 6455)

Submitted May 7, 1929.    Decided May 14, 1929.
(As modified, on denial of rehearing July 19, 1929).

*Campbell & McClintic,* for appellant.

*Arthur F. Kingdon,* for appellees Bailey Lumber Co., Mingo Lime & Lumber Co., Emmons-Hawkins Hardware Co., Kingsport Brick Corporation, and Virginia School Supply Co.

*Jos. M. Crockett,* for appellees Tug River Lumber Co., Welch Plumbing & Heating Co., E. F. Fulp, and C. B. Propst.

WOODS, PRESIDENT:

This is a suit upon a bond executed by Charles H. Smithey, as principal, and American Surety Company of New York, as surety, seeking to recover from American Surety Company for labor and materials furnished by the several plaintiffs in the construction of a certain school building, on which Smithey was the contractor. The cause was referred to a commissioner who reported the debts for labor and materials furnished for the building of the structure, which amounted to approximately $20,000.00. There is no contention but that the debts so found represented correct amounts due. The court confirmed the commissioner's report and decreed that the surety company was liable therefor under the bond executed by it. It is from this decree that the surety company appeals.

The controlling items in this case are: (1) the contract entered into on October 4, 1927, between Smithey and the Board of Education, (2) the bond given in pursuance thereof, on the 7th day of October, 1927, and (3) section 12, Chapter 75, Code, prescribing the taking of a bond to cover the cost of material used and labor employed in such cases. The material part of the contract, after reciting the consideration of $31,790.00, provides on the part of the first party:

> "FIRST: The contractor agrees to furnish all necessary material and perform all work and labor in the erection of a two story brick building in the town of Jenkinjones, McDowell County, West Virginia, known as 'Jenkinjones School Building, Jenkinjones, West Virginia', said material to be furnished and work performed in accordance with plans and specifications therefor hereto attached, marked 'Specifications for School Building, Jenkin-

jones, West Virginia', 'Plan 15-949', and made a part of this contract the same as if said specifications were fully set forth herein. * * * THIRD: The contractor agrees to furnish an indemnifying bond in some solvent insurance company in the penalty of at least $31,790.00 conditioned that the contractor will indemnify the owner against any loss directly arising by reason of the failure of the contractor to faithfully perform this contract according to terms, covenants and conditions herein contained, and to deliver the said building to the owner free from any liens or encumbrances on account of labor performed and materials furnished in connection with the erection of said building. * * *''

The bond recited that the principal had entered into the aforesaid contract ''a copy of which is hereto annexed,'' and that the principal and surety were firmly bound unto the said Board of Education in the sum of $31,790.00, conditioned ''that if the Principal shall indemnify the Obligee against any loss or damage directly arising by reason of the failure of the Principal to faithfully perform said contract, then this obligation shall be void: otherwise to remain in full force and effect.'' It was the standard form of bond executed in ordinary cases, and contained the usual condition precedent which the surety company relies on here, ''That no right of action shall accrue upon or by reason hereof, to or for the use or benefit of any one other than the obligee herein named; and that the obligation of the surety is, and shall be construed strictly as, one of suretyship only; that this obligation shall be executed by the principal before delivery, and shall not, nor shall any interest therein or right of action thereon, be assigned without the prior consent, in writing, of the surety.''

The question resolves itself into a legal one of whether the company is liable therefor under said bond. The surety company contends that the bond in question was not given in pursuance to the section of our Code heretofore mentioned, but is for the sole protection and benefit of the board of education. On the other hand, the appellees contend that the bond in question was given for the purpose and with the in-

tention of complying with the spirit and meaning of this statute, and was not for the sole protection and benefit of the board of education. Thus is presented the chief issue.

What were the circumstances under which the bond was given? It was executed by the contractor pursuant to an agreement in his contract with the board that he would furnish an indemnifying bond. The board of education is a statutory body. By the plain mandate of the statute (section 12, Chapter 75, Code) the board is enjoined in such case to require a good, solvent and sufficient bond to be executed, and filed with its secretary, to cover cost of the material used and labor employed in the construction of such public building. The patent reason for such bond is that the lien imposed by law to secure payment for such furnishings does not attach to public structures. *Iron Works* v. *County Court,* 89 W. Va. 367. The surety company was requested to furnish a bond to the board of education under these circumstances, and was it not bound to know the nature of the condition it would become liable upon lf broken. Our attention is directed to the fact that Chapter 45, section 52, Code, requires persons entering into contracts with boards of education for the building and repairing of school houses, where the contract price exceeds one hundred dollars, to execute bond with approved security in double the amount of the contract price. It is argued by counsel for the appellant that this bond is to be given solely for the protection of the board of education. The statute does not so state. The fact that it is for double the amount of the contract price negatives such legislative intention. The two sections of the statute, read together, are not inconsistent but evince a purpose to protect all concerned in performance of the project. Then, section 12 of Chapter 75 is specifically designed to protect those furnishing labor and material in all buildings of a public nature. When the Legislature revised Chapter 45 relating to education in 1919, section 52 was evidently enacted in the light of such provision. It is, of course, conceded that a surety company may, in dealing with private citizens, with a free hand, unhampered by statutory restrictions, make a contract of suretyship as it chooses, and guard and limit its liability by as many provi-

sions as it pleases, and if the one for whose benefit it is given accepts it on good faith, the surety is bound only according to the terms of the bond. But even in the latter case, the authorities are in agreement, that where the insuring is done for profit, the contract, when there is room for construction, is to be most strongly construed against the surety and in favor of the indemnity which the obligee had reasonable grounds to expect.

The bond under consideration is conditioned to indemnify the obligee against any loss or damage directly arising by reason of the failure of the principal to faithfully perform the contract for the erection of the public building.

We have examined the cases cited by the appellants. As an example, that of the *United States* v. *Montgomery Heating & Ventilating Co.*, 255 Fed. 83. There it was said that under the statutes of the United States, where any person entered into a formal contract with the government, for the construction of a public building, he shall be required before commencing the work to execute a penal bond with good and sufficient sureties, with the additional obligation that such contractor shall promptly make payments to all persons supplying him with labor and materials in the prosecution provided in the contract. The bond was briefly conditioned that the contractor should well and truly comply with, keep and perform all and singular the covenants, agreements and conditions and stipulations made by him in, by, or through said contract. The court held that it was not the statutory bond required. The court said: ''It will be observed that the bond did not impose the additional obligation to make payments to all persons supplying labor and material, as required by the act; *nor did the contract mentioned in the bond obligate the contractors to make payments to the laborers and middlemen.*'' To like effect was the cited case, *United States* v. *Starr*, 20 Fed. (2nd) 803. In that case the court said: ''It appears that the bond contained no provision obligating the surety to pay for labor and materials. The bond by reference incorporates the contract, *but the contract contains no such obligation.*'' These cases are fairly indicative of the holding of the federal courts on the question here.

On the contrary, in the instant case, we have an express provision in the specifications which are made a part of the contract, which contract in turn is a part of the bond in question, that the contractor shall satisfy the claims of the mechanics and materialmen. Thus, rather than as authority for the appellant's position, the federal decisions argue to sustain the legal attitude of the appellees here. The appellant cites cases from the courts of other states, where under much the same situation as here, the bond was held not to protect such materialmen, but they are of little value as precedents when a comparison of the statutes of the states, under which the cases arose, is made with ours, and the decisions of this Court in relation thereto. It is axiomatic that the contract by specific reference in the body of a bond becomes a part of the bond. The specifications, made specifically a part of the contract here, require the contractor to satisfy the claims of mechanics and materialmen. But the counsel for appellant contend that the bond is conditioned to indemnify the board of education against loss or damage and for no other purpose. If a statutory bond, in so far as it may attempt to so, provide that no right of action shall accrue to or for the use or benefit of any one other than the obligee in the bond, it is contrary to the statute and to the public policy of the state as expressed therein and would therefore be void. *Hartford Accident & Indemnity Co.* v. *Board of Education,* 15 Fed. (2nd) 317. This last cited case was an affirmance of the District Court of the United States for the Southern District of West Virginia in allowing recovery on a bond containing identically the clause, as in the instant bond, for materialmen and laborers. The court there said: ''When the bond is read in connection with the contract, which is expressly made a part of it, we have not a mere indemnity agreement guaranteeing plaintiff against loss from breach of contract on the part of the contractor, but a contract of suretyship, in which the defendant undertakes that the contractor will faithfully perform his contract and will pay all subcontractors and labor and material bills.'' The bond here required by the statute was manifestly intended by the Legislature for the protection of those furnishing labor and material on public buildings in

lieu of the protection afforded by the lien of the statute in other cases. In construing a similar statute the Supreme Court of Wisconsin said: ''Obviously this statute was enacted for the purpose of protecting subcontractors furnishing labor and material entering into the construction of public buildings which are not subject to a lien as are buildings owned by private individuals.'' *Baumann* v. *City of West Allis,* 181 Wis. 506. This being a remedial statute, it will be construed most liberally to suppress the mischief and advance the remedy. 2 Sutherland, Statutory Construction (2nd Ed.), sec 585. Another most significant fact is that the penalty of the bond is for the exact price ($31,790.00) provided for in the contract. Chapter 75, section 12, provides that it shall be for at least a reasonable cost of the undertaking. All these facts unmistakably, in our opinion, point to the fact that the board was endeavoring to comply with the statute in taking the bond, and that the surety company was charged by all the circumstances surrounding the transaction with the character of indemnity required.

Having determined such a bond was intended, the next question to be considered is the question of the sufficiency of the protective provisions in said bond. This Court has said in regard to public bonds, that the law in force at the time of the giving thereof fixing a certain condition for it and saying what its obligation shall be is a part of the bond as effectually as if such obligation were in the words inserted in it. *State* v. *Nutter,* 44 W. Va. 388. In other words, if a bond is given under the authority of the law, that which is not expressed but should have been incorporated is included in the bond while that which is not required by law is excluded. *Chambers* v. *Cline,* 60 W. Va. 595. So, a bond given under the statute must be construed, as to the scope of its obligations, to cover the object of the statute in requiring it, if its words at all allow such construction, and the statute is to be regarded as a part of it. *State* v. *Wotring,* 56 W. Va. 394. Putting all in a nut shell, a bond given under a statute must be construed as to the scope of its obligation to cover the objects of the statute requiring it. *Hicks* v. *Randich,* 106 W. Va. 109. The foregoing holdings of this Court are con-

490

sonant with the decisions of the courts in all jurisdictions. 9 C. J. 34. The courts are equally in unison in holding that whatever is included in a statutory bond, and is not required by the law, must be read out of it. 9 C. J. 56; *Chambers* v. *Cline, supra.*

So, the attempt to make the board of education the sole obligee in the bond will not avail, since the statute does not require a bond to be taken by the board merely for its own protection. Conceding that there is no right of lien against the school building, this bond if only for the protection of the board, and not for the protection of laborers and materialmen, would be meaningless. In the terse words of one of our jurists, "Courts struggle to make public bonds answer public justice." In the instant case it is a public bond, and the indemnity company insuring for profit must be held to have known that the law required such a bond, and that it had a certain legal force. The law made the instrument in this case necessary, and the parties are deemed to have had the law in contemplation when the contract was executed, and bound themselves in reference thereto.

*Affirmed.*