ELLSWORTH L. PIPER

*v.*

CHESTER MAURICE MILLER

(No. 12886)

Submitted February 18, 1970.     Decided April 21, 1970.

Rehearing Denied June 9, 1970.

*Clark B. Frame,* for appellant.

*Kermit R. Mason, Charles S. Armistead,* for appellee.

BERRY, JUDGE:

This is an appeal by the plaintiff, Ellsworth L. Piper, from an order of the Circuit Court of Monongalia County entered on February 18, 1969, which set aside a verdict and judgment in favor of the plaintiff in the amount of $25,000, in a case involving an automobile accident, and rendered judgment for the defendant, Chester Maurice Miller, on the ground that the plaintiff was guilty of contributory negligence as a matter of law. The appeal was granted by this Court on October 27, 1969, from said judgment and the case was submitted for decision on arguments and briefs at the January Regular Term, 1970, of this Court.

After the appeal was granted the plaintiff asked for leave to move to reverse and for the case to be heard and determined upon the original record and typewritten briefs because of his financial condition. The leave prayed for was granted and the motion to reverse was filed in this Court on January 20, 1970.

A motion to dismiss the appeal as improvidently awarded was filed by the defendant on the ground that the plaintiff failed to give notice of the filing of the transcript of the proceedings had and the testimony taken at said trial as required by Rule 80(c), R.C.P. This action was separately briefed by the parties but argued along with the merits of the case at a full hearing.

The case involves an automobile accident which occurred on State Route 7 about seven miles in the open country from Morgantown, West Virginia, on December 10, 1966, when the plaintiff made a left turn into a private driveway while the defendant was attempting to overtake and pass the plaintiff's vehicle. The accident occurred about 11 o'clock in the morning and it was raining at the time. The plaintiff testified that he could see for a distance of about a thousand feet behind him, that he looked in his rear view mirror and that there was nothing on the road behind him. He stated that he was driving about 20 miles an hour and that when he was about 100 feet from the point at which he attempted to make a left

turn he put on his "blinkers," or left-turn signal, and that as he was almost across the road, into the private driveway, the defendant's car struck his car in about the middle section of his car and knocked his vehicle some 20 feet off to the left of the road. He stated that he did not hear the defendant sound his horn as a signal to pass and that he slowed down to a few miles an hour just before making the turn.

The defendant testified that after he rounded a turn in the road he saw the plaintiff's car about a quarter of a mile in front of him; that he was driving about 35 miles an hour; that there was no signal of a left turn given by the driver of the car in front of him; and that he sounded his horn, increased his speed to about 45 miles per hour and attempted to pass plaintiff's automobile at which time the plaintiff's automobile turned in front of his car and he turned to the left in an attempt to avoid an accident and struck the left side of plaintiff's automobile.

Under cross-examination the plaintiff stated that it may have been less than 100 feet from the turning point at the time he gave the left-turn signal. In any event, the plaintiff turned his automobile to the left at almost the same time as the defendant was abreast of him in the left-hand lane attempting to pass the plaintiff's automobile. The plaintiff stated that the vision on the road behind his automobile was clear for about one thousand feet and that he looked in the rear view mirror about 150 feet before the accident occurred and saw nothing whatsoever behind him. He was asked by the defendant after the accident why he did not give a signal and he replied that he did.

The plaintiff sustained severe injuries to his right leg, a fracture in his pelvis and other injuries, greatly incapacitating him because of the fact that his left leg had been amputated some fifteen years before. The medical evidence is undisputed that the injuries received by the plaintiff in the accident were of a serious nature and would result in his being incapacitated for quite some time.

In addition to the conflicting evidence over whether a turn signal was given, there is confusing evidence as to how

the signal functioned. The automobile driven by the plaintiff was a 1948 model Plymouth and was not equipped with turn signals at the time it was purchased. However, it appears that the turning indicator equipment had been installed on the automobile later. A State policeman who investigated the accident at the request of the defendant soon after it occurred examined the turning signal equipment. He testified that there was no bulb in the turning signal reflector area on the left side and that although there was a socket dangling inside the trunk there was neither a bulb nor broken parts of one visible. It appears from his testimony that there were places for two bulbs on the left side and that one bulb was missing, but that the other bulb, a tail light, burned. He further testified that the turning signal on the right side also did not blink although it burned but did not say that the ignition at the time it was tested was cut on.

The plaintiff testified in a deposition which is contained in the record that although he turned the signal on and a dash indicator showed it working, it was broken in the accident because the wire leading to the turn signal socket with the bulb in it went through the car near the point of impact, the force of which broke the wire and yanked the socket and bulb out. This leads to the implication there were two bulbs, one for turn signal and one for tail light. However, at the trial he testified that there was only one bulb with two filaments for both "brake lights or taillights" and the turning signal but after that he said there were two bulbs, one of which he hooked up himself as a "brake light," and still later that the "brake light" was in the center of the car. It appears that the plaintiff had paid a fine or that someone paid it for him for not having turning signals working on his automobile and that the defendant paid a fine after the accident for not having his vehicle under control after pleading nolo contendere to the charge.

Evidence was introduced on behalf of the plaintiff by a mechanic to the effect that on American cars the taillight and turning signal consists of one bulb with two filaments,

one of which was used for "parking lights" and the other for signal lights, and that the 1948 Plymouth had a "brake light" in the center of the car above the license plate; that the tail-light would burn without the ignition being on but that the turning signal filament would operate only when the ignition was turned on. However, this mechanic stated that he did not examine the plaintiff's car, that turning signals were not installed on Plymouth automobiles until the 1949 models and that the turning signal on the plaintiff's car could have been a different turning signal arrangement from those on models after that time. The evidence with regard to the fines paid by both the plaintiff and defendant was given by the State policeman and no records of the justice of the peace before whom the citations were brought were introduced during the trial.

The first question to be answered is raised by the defendant's motion to dismiss the appeal on the grounds that the notice required by Rule 80(c), R.C.P. is jurisdictional and the plaintiff's failure to give said notice requires the appeal to be dismissed as improvidently awarded. This question has not heretofore been specifically considered for decision by this Court.

It is true that Rule 80(c), R.C.P. provides that when a transcript of the proceedings had and testimony taken at a trial is filed with the court, the party causing it to be filed must promptly give notice of the filing to all other parties. Lugar and Silverstein, West Virginia Rules of Civil Procedure at page 525.

Such transcript of the proceedings is filed with the court when filed with the clerk of the court and the date of the filing marked thereon, or, with the judge if so permitted by him with the filing date marked thereon and transmitted to the office of the clerk. The transcript of the proceedings then becomes a part of the record in the action without an order of the court. Rule 5(e), R.C.P. The notice required by Rule 80(c), R.C.P. applies only to such transcripts as are taken at a trial on the merits and does not apply to transcripts of the

proceedings had and testimony taken at a hearing on limited phases either, before a trial court or before a commissioner. LUGAR AND SILVERSTEIN, WEST VIRGINIA RULES OF CIVIL PROCEDURE at page 525. In the event of doubt, it obviously would be much safer to give a notice.

In the case of *The Employers' Liability Assurance Corporation v. Hartford Accident and Indemnity Company and Jewell Ridge Coal Corporation,* 151 W.Va. 1062, 158 S.E.2d 212, it was held that such notice of filing of the transcript of the proceedings was not required in a case involving a summary judgment under Rule 56, R.C.P., because it was not a trial within the meaning of the Rules of Civil Procedure, and it was further stated that the Rule was not jurisdictional to prevent an appeal for lack of notice but in any event could only limit the scope of the appeal to matters outside of the transcript if it could not be considered.

Although there was no separate notice served on the defendant at the time of the filing of the transcript of the proceedings as required by Rule 80(c), R.C.P. the defendant received a copy of the transcript of the proceedings at the time it was filed and this copy was used by the defendant in his preparation of pleadings, papers and briefs filed in this Court. The purpose of giving notice of the filing of the transcript of the proceedings as required in Rule 80(c), R.C.P. is to give the other parties an opportunity to have any errors in the transcript corrected and revised as necessary to conform to the whole truth and to settle any differences arising in connection therewith as provided for in Rule 80(d), R.C.P. There is no contention in the case at bar that the use of the provisions contained in Rule 80(d) was necessary.

The Federal Rules upon which the West Virginia Rules of Civil Procedure are patterned do not have any requirements as to notice of filing of a transcript as the West Virginia Rules do under Rule 80. However, the Federal Rules do provide for prompt notice of the filing of depositions taken, either orally or by interrogatory, under Rules similar to 30(f)(3) and 31(c), R.C.P., and it will be noted that the language under Rule 30(f)(3), R.C.P. is identical to the language in Rule

80(c) with regard to the giving of the notice, which reads in 30(f)(3) as follows: "The party taking the deposition shall give prompt notice of its filing to all other parties." However, it is stated in 2A BARRON AND HOLTZOFF, FEDERAL PRACTICE AND PROCEDURE, Rules Edition, § 719, that this Rule is frequently ignored and failure to give the notice is waived in the absence of a motion to suppress the deposition. It was held in the case of *Houser v. Snap-On Tools Corporation*, 202 F. Supp. 181, that the failure to give the notice required was harmless error where the other party saw the deposition before the trial although the notice of the filing was not served on such party. It was also held in the case of *Oates v. S. J. Groves & Sons Company*, 248 F.2d 388, that the failure to give notice of the filing where the party learned about the deposition during the trial in time to discuss it was not prejudicial and notice was waived in the absence of a motion to suppress. Although Rule 80(c), R.C.P. requires that prompt notice of the filing of the transcript of the proceedings be given to all other parties and such notice should always be given or served in order to comply with the requirements of this Rule, the fact that the defendant promptly received a copy of the transcript of the proceedings and that there was no need to protect him by the use of the provisions for correction contained in Rule 80(d), R.C.P. would indicate that lack of strict compliance was not prejudicial here. It would appear that the defendant for all practical purposes had the notice required under Rule 80(c), R.C.P., and although it may be considered a technical error not to give a separate notice of the filing of the transcript of the proceedings it is not jurisdictional or prejudicial error in such case.

It is the contention of the plaintiff, appellant here, that the questions of negligence and contributory negligence involve conflict of evidence and were questions for jury determination and that it was reversible error for the trial court, once this conflict had been resolved, to set aside the jury verdict and judgment thereon in favor of the plaintiff and to enter judgment in favor of the defendant. Based upon these arguments, the plaintiff asks this Court to reverse the judgment of the

trial court in favor of the defendant and reinstate the jury verdict and judgment thereon in the amount of $25,000 in favor of the plaintiff.

The defendant assigned cross errors in his brief in this appeal, contending that to reinstate the jury verdict as requested by the plaintiff would be to cause a verdict to be based on improper instructions, that if the trial court had not set aside the verdict of the jury this Court would have been compelled to reverse the trial court because of reversible error in improperly instructing the jury in that it gave Instruction 2 offered by the plaintiff over the objection of the defendant which failed to consider the contributory negligence on the part of the plaintiff, and in that it refused to give six instructions offered by the defendant, all of which properly stated the law applicable to the facts in the instant case. These will be discussed later.

Code, 17C-7-1(a), as amended, provides that: "Upon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway, except as follows: (1) When overtaking and passing another vehicle proceeding in the same direction * * * . " Code, 17C-7-3, as amended, provides as follows: "(a) The driver of a vehicle overtaking another vehicle proceeding in the same direction shall give an audible signal and pass to the left thereof at a safe distance and shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle." Code, 17C-8-8(a), as amended, provides that: "No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway * * * or turn a vehicle to enter a private road or driveway * * * unless and until such movement can be made with reasonable safety. No person shall so turn any vehicle without giving an appropriate signal in the manner hereinafter provided in the event any other traffic may be affected by such movement.

"(b) A signal of intention to turn right or left when required shall be given continuously during not less than the last one hundred feet traveled by the vehicle before turning."

It will be noted that the applicable statutes to the case at bar require that no turn can be made upon a roadway in order to enter a private road or driveway until such movement can be made with reasonable safety and also that a proper signal must be given in the direction of the intended turn continuously for at least one hundred feet before making the turn.

It would appear that the case of *Adkins v. Minton*, 151 W.Va. 229, 151 S.E.2d 295, was the first case in which this Court dealt with the question of respective duties of the drivers of overtaken and overtaking vehicles. The issues in that case were the same as in the instant case as to whether the plaintiff or defendant was guilty of negligence and if both were guilty what was the proximate cause of the accident. It was the contention of the plaintiff in the *Adkins* case that the questions were for jury determination. It was the contention of the defendant that the action on the part of the plaintiff in connection with making a left turn amounted to contributory negligence as a matter of law and barred recovery by the plaintiff. In that case the plaintiff turned the vehicle she was driving to the left to turn into a side road and she was struck by the defendant's car while he was attempting to pass her vehicle. There was no rear view mirror on the plaintiff's vehicle and she stated she did not see the defendant's car and did not hear the defendant give an audible signal. She stated that she gave an arm signal, there being no mechanical signal on her vehicle, but after the accident she was found unconscious and the window on the driver's side was rolled up thus precluding any possibility that she had given a signal. It was held that the questions with regard to the passing and turning signals were jury questions but that the failure on the part of the plaintiff to see the overtaking automobile after looking to the rear amounted to contributory negligence as a matter of law because she did not look effectively and ascertain whether the left turn could be made with reasonable safety.

The principle of law laid down in the *Adkins* case in 1966 by this Court with regard to the making of a left turn into a passing lane has been cited as authority dealing with this

principle for statements contained in the new volume 60A C.J.S., *Motor Vehicles*, § 303 [1] and 1A Schwartz, Trial of Automobile Accident Cases, 1969 Cumulative Supplement, § 447(e).

The later case of *Fortner v. Napier*, 153 W.Va. 143, 168 S.E.2d 737, deals with a passing situation and is not applicable to the case presented here because the defendant in that case was driving at an excessive rate of speed and attempted to pass the plaintiff's vehicle where there was a double line on the highway.

The majority of the Court are of the opinion that the facts in the case at bar are different from those contained in the *Adkins* case with regard to the plaintiff using the required care in the making of a left turn into the private driveway, that this case is not governed by the decision in the *Adkins* case, that therefore, the entire question of negligence on the part of the defendant and contributory negligence on the part of the plaintiff are questions for jury determination in the instant case, and that if it were not for the cross assignments of error by the defendant they would reverse the judgment of the trial court, reinstate the verdict of the jury and enter judgment for the plaintiff in this Court.

The writer of this opinion believes the *Adkins* case is controlling and that the failure of the plaintiff to see the defendant's overtaking automobile attempting to pass him means that he did not look effectively and ascertain that the left turn could be made with reasonable safety and that therefore he was guilty of negligence as a matter of law. Consequently, the writer would affirm the judgment of the trial court. This position by the writer is taken because it has been repeatedly held that the failure to look effectively is the same as not looking at all and amounts to contributory negligence as a matter of law. 60A C.J.S., *Motor Vehicles*, § 303(3); *Smith v. Penn Line*, 145 W.Va. 1, 113 S.E.2d 505; *Brake v. Cerra*, 145 W.Va. 76, 112 S.E.2d 466; *Jackson v. Cockill*, 149 W.Va. 78, 138 S.E.2d 710.

However, the majority wish to dispose of the case on the cross assignments of error so these will now be considered.

The first cross assignment of error by the defendant is without merit. It was contended that the giving of Instruction 2 offered by the plaintiff was reversible error, but the record clearly indicates it was refused by the trial court.

On the other hand, several of the instructions offered by the defendant and refused by the court were good instructions and should have been given unless covered by other instructions. Instruction 17 dealt with conjecture, surmise and sympathy and was refused because another instruction offered by the defendant, Instruction 13, dealt with sympathy and prejudice. Instructions 18, 19 and 20 were objected to on the grounds that they all contained statements with regard to the burden of proof covered by other instructions. However, they also dealt with other matters. Instruction 19, which was refused, dealt properly with the burden of proof both with regard to the negligence of the defendant and the contributory negligence of the plaintiff.

The refusal on the part of the trial court to give Instruction 9 offered by the defendant clearly constituted reversible error. It covered the law applicable to the case at bar. It was objected to on the grounds that it stated that the plaintiff was guilty of negligence unless he gave *both* a mechanical signal *and* a hand signal, which it did not say, and also objected to because the failure of the plaintiff to comply with the provisions of the statute was not prima facie negligence if defendant was speeding excessively, but there was no evidence to support this objection. The uncontradicted evidence was that at no time was the defendant driving over 45 miles an hour on a straight roadway and the speed limit where the accident occurred was 55 miles an hour.

Instruction 9 reads as follows:

"The Court instructs the jury that under the traffic regulations and laws of the State of West Virginia, it is the duty of the driver of a vehicle upon all roadways of sufficient width to drive said vehicle upon the right half of the roadway, and the law further provides that no person shall turn a vehicle from its direct course or turn said vehicle from the right half of the roadway unless and until such movement

can be made with reasonable safety; that the driver of the vehicle intending to turn left must first give a hand *or* mechanical signal of his intention to make said left-hand turn continuously during not less than the last one hundred feet travelled by the vehicle before making the left-hand turn, and that the failure to observe either of these rules constitutes prima facie negligence.

"You are therefore further instructed that if you believe from the evidence in this case that Ellsworth L. Piper made a left-hand turn when such movement could not be made with reasonable safety, *or* if you believe from the evidence in this case that Ellsworth L. Piper made a left-hand turn on the highway without first giving a proper signal of his intention so to turn continuously during not less than the last one hundred feet travelled by his said vehicle before making said left-hand turn, then, in either event, you are instructed that such action constitutes negligence, and if you further believe that such negligence was a proximate cause of the wreck in this case, then you should find for the defendant, Chester Maurice Miller, in the action brought by the plaintiff, Ellsworth L. Piper." [Emphasis supplied.]

It will be noted that this Instruction is almost verbatim in the words of the applicable statutes and that it does not by any stretch of the imagination say that both a mechanical and hand signal must be given. It states that either a hand signal *or* mechanical signal must be given and it provides that two things must be done as required by the statutes, that a left-hand turn can not be made unless and until such movement can be made with reasonable safety and that a proper left-turn signal must be given either by a hand signal or mechanical signal. The refusal on the part of the trial court to give to the jury this proper instruction on the law pertaining to the instant case clearly constitutes reversible error.

For the above reason the motion to reverse the judgment of the Circuit Court of Monongalia County is granted and the case is remanded for a new trial.

*Motion to reverse granted; remanded for new trial.*