THE STATE ROAD COMMISSION OF WEST VIRGINIA

*v.*

DEVON D. CURRY *and* ALBERTA CURRY

(No. 12970)

Submitted January 25, 1972.      Decided March 28, 1972.
Dissenting Opinion March 28, 1972.

820

*Robert W. Friend,* for plaintiff in error.

*Wm. Bruce Hoff, Daniel A. Ruley, Jr.,* for defendants in error.

CALHOUN, PRESIDENT:

This case involves a proceeding in eminent domain instituted in the Circuit Court of Wood County by The State Road Commission of West Virginia, (presently designated by statute as the West Virginia Department of Highways), as the petitioner, against Devon D. Curry and Alberta Curry, as the landowners, in order to acquire certain easements over real estate belonging to the landowners for the purpose of constructing a public highway.

The State Road Commission of West Virginia, which hereafter in this opinion may be referred to as the petitioner or as the condemner, was granted a writ of error and supersedeas by this Court from a final judgment rendered by the Circuit Court of Wood County on June 9, 1969, on a jury verdict in favor of the landowners in the sum of $42,200. In entering final judgment, the trial court deducted from the amount of the jury verdict the sum of $27,300 previously deposited by the condemner with the clerk of the trial court pursuant to the provisions of Code,

1931, 54-2-14a, as amended. The net amount of the judgment entered, therefore, was the sum of $14,900 with interest payable thereon from July 28, 1966, the date the condemner was permitted by an order of the trial court to enter upon and to take possession of the real estate pursuant to the provisions of Code, 1931, 54-2-14a, as amended.

The petition for a writ of error and supersedeas was filed in the office of the Clerk of this Court on February 9, 1970. The Court granted the writ of error and supersedeas on June 8, 1970. On August 29, 1970, counsel for the landowners filed a written motion to dismiss the writ of error and supersedeas as having been improvidently awarded by the Court. Notice was served by counsel for the movant upon the condemner that the motion would be brought on for hearing before the Court on Tuesday, September 22, 1970, at ten o'clock a.m. Upon the return day of the motion, the Court announced to counsel that decision of questions arising upon the motion to dismiss would be deferred until decision of the case on its merits.

One ground of the motion was that the clerk of the trial court did not transmit the petition for a writ of error and supersedeas and the trial court record to the Clerk of this Court "by United States registered mail or valued express," pursuant to the provisions of Code, 1931, 58-5-6, but that, on the contrary, the petition and the record were "hand carried" to the office of the Clerk of this Court by Robert W. Friend, counsel for the condemner. We are of the opinion that the statutory language quoted above relating to the transmittal of the petition and record is merely directory.

The Court takes judicial notice of the fact that, over a long period of years, it has not been unusual for counsel for an appellant or for a plaintiff in error to deliver in person the petition and record by which an appeal or writ of error has been sought. It would be ridiculous, for instance, to assert that this Court would be unwarranted in granting an appeal or a writ of error to a final judgment

of the Circuit Court of Kanawha County unless the petition, supporting memorandum and record were transmitted by the clerk of that trial court to the office of the Clerk of this Court by "United States registered mail or valued express," both courts being located in the same county. The important and determinative fact in this connection is that the records in the office of the Clerk of this Court disclose that the trial court record and the petition, accompanied by a written memorandum in support of the prayer of the petition, were duly filed in the Clerk's office on February 9, 1970, which was the last day within the appeal period of eight months prescribed by Code, 1931, 58-5-4, as amended.

A second ground of the motion to dismiss the writ of error and supersedeas is that the condemner did not execute a bond properly conforming to the language and requirements of Code, 1931, 58-5-6, which requires one seeking an appeal or writ of error to this Court to deposit with the clerk of the circuit court a "sufficient sum of money to defray the expenses of the preparation and indexing of the record, fees for filing the petition and making and certifying necessary copies of orders, costs of transmission and return of the record, and the making of a transcript of the record, or file with the clerk a bond conditioned to pay the same, in a penalty and with sureties to be fixed and approved by such clerk, * * *." The record in this case contains a bond executed by the State Road Commission of West Virginia in the penal amount of $500, with Western Surety Company as the corporate surety, approved by the clerk of the trial court, and bearing a stamp which discloses that the bond was duly filed in the office of the clerk of the trial court on February 9, 1970. Appended to the petition for a writ of error and supersedeas is a certificate of the clerk of the trial court which recites the execution and filing of a bond for $500 "to cover the costs of preparing record in case an appeal or supersedeas is granted."

It is true that the portions of the bond relating to the conditions thereof are not precisely and exactly worded in the language of the statute, but the bond, when read and considered in its entirety, clearly discloses that it was executed in order to comply with the requirements of Code, 1931, 58-5-6.

It is a fundamental legal proposition that a bond executed pursuant to a statutory requirement must be construed and applied in conformity with the provisions of the pertinent statute and must be read and construed in conformity and in compliance with the statutory language which prescribes the terms and conditions of the bond so formulated and executed, whether the statutory language is or is not expressly and precisely stated in the bond. In other words, pertinent statutory language will be read into a bond executed pursuant to statutory requirements, whether the bond does or does not technically and precisely state and thus embody the language of the statute which prescribes the form or conditions of the bond. *State ex rel. County Court of Pleasants County v. Anderson,* 140 W.Va. 827, pt. 1 syl., 87 S.E.2d 249; *Atlas Powder Co. v. Nelson and Chase & Gilbert Co.,* 124 W.Va. 298, 304, 20 S.E.2d 890, 893; *Tug River Lumber Company v. Smithey,* 107 W.Va. 482, pt. 3 syl., 148 S.E. 850; *Chambers v. Cline,* 60 W.Va. 588, pt. 2 syl., 55 S.E. 999.

As an additional ground urged in support of the motion to dismiss the writ of error and supersedeas, it is asserted that the plaintiff in error "wholly failed to comply with the notice of the filing of" the transcript of the trial court proceedings required by R.C.P. 80 (c) which, together with R.C.P. 5 (b) and 5 (e), was made applicable to eminent domain proceedings by R.C.P. 81 (a) (6) as amended by order of this Court on March 3, 1969, and that consequently the transcript of the trial court proceedings is not a part of the record before this Court.

R.C.P. 80 (a) provides that when proceedings of a trial are stenographically reported by the official or other

court reporter, "a duly certified transcript thereof becomes a part of the record of the action when it is filed with the court during the pendency of the civil action or at any time afterward." R.C.P. 80(c) is as follows: *"Notice of filing transcript.* When a transcript of the proceedings had and testimony taken at a trial is filed with the court, the party causing it to be filed shall promptly give notice thereof to all other parties."

In the second point of the syllabus of *Crusenberry v. Norfolk & Western Railway Company,* 155 W.Va. 155, 180 S.E.2d 219, the Court stated that the language of R.C.P. 80(c) relating to notice of the filing of the transcript of the trial court proceedings is mandatory and "must be complied with *unless the requirement of notice contained therein is waived by the party to be given such notice."* (Italics supplied.) In that case, no notice whatsoever of the filing of the transcript was given to the party entitled to receive the notice. He had no knowledge of the filing thereof. In these circumstances, the Court held that the portion of the record which was embodied in the court reporter's transcript was not legally before this Court and therefore could not be considered upon the appeal of the case to this Court. In *Piper v. Miller,* 154 W.Va. 178, 173 S.E.2d 662, though the party entitled to receive a notice of the filing of the transcript was not given any formal notice, he had, as a matter of fact, promptly received a copy of the transcript. It was held in that case that the lack of strict compliance with the requirement of notice was not prejudicial. In that connection, the Court stated (173 S.E.2d 662, 666): "It would appear that the defendant for all practical purposes had the notice required under Rule 80(c) R.C.P., and although it may be considered a technical error not to give a separate notice of the filing of the transcript of the proceedings it is not jurisdictional or prejudicial error in such case." In *Lester v. Rose,* 147 W.Va. 575, 587, 130 S.E.2d 80, 89, the Court stated: "Under the provisions of Rule 80, R.C.P., it is only necessary for the official court reporter to duly certify the transcript of the proceedings and file it with the Court."

In light of the language of pertinent Rules of Civil Procedure as construed and applied in prior decisions of this Court referred to immediately above, and in the light of the unusual circumstances of this case, we are of the opinion that this ground of the motion to dismiss is without substantial merit. We shall now proceed to state some of the unusual circumstances of this case which, in our opinion, have a pertinent bearing upon this ground of the motion to dismiss.

The amendments of the Rules of Civil Procedure making R.C.P. 5(b) and 5(e) and R.C.P. 80 applicable to eminent domain proceedings became effective March 3, 1969. R.C.P. 87 deals with the effective date of any amendment of the Rules of Civil Procedure. It is obvious that counsel and the trial court were unaware of the March 3, 1969, amendments relating to the method of making trial court proceedings in eminent domain a part of the record for appellate purposes; or else they were of the opinion that the amendments were not applicable to the eminent domain proceeding commenced in this case prior to the effective date of the amendments.

Counsel for the respective parties and the trial court obviously were of the opinion that principles relating to bills of exceptions or certificates in lieu thereof, as prescribed by Code, 1931, 56-6-35, and 56-6-36, were applicable to this case. Various orders of the trial court were entered in order to extend the time for executing proper bills of exceptions pursuant to the statutory requirements. The trial court entered an order on February 4, 1970, which purported to make a part of the record the court reporter's transcript of the trial court proceedings pursuant to the prior statutory requirements relating to bills of exceptions. This order, endorsed for entry by the judge of the trial court and approved by the signature of Robert W. Friend, counsel for the condemner, and by the signature of Wm. Bruce Hoff, counsel for the landowners, is in part as follows:

"This 4th day of February, 1970, came the Petitioner in the above styled case by Robert W. Friend, its attorney and *presented unto the Court a true and complete transcript of all the evidence,* * * * *and certified by Marguerite Mansfield, Official Court Reporter, to be a true and correct transcript of all the evidence introduced and proceedings had in the above styled case* * * * and thereupon the Petitioner moved the Court that the said Petitioner's Bill of Exceptions Number 1 *be signed, sealed, enrolled and saved to it and made a part of the record in this case, and certified to the Clerk of this Court as part of the records herein* * * * and it is hereby ADJUDGED and ORDERED that *the said transcript* * * * *of the testimony,* * * * taken and subscribed by the said Court Reporter in the above styled case, be, and the same is *hereby made a part of the record* in this case, and the said evidence is certified as all of the evidence offered in said case, *and is hereby made a part of the record herein,* and it is further ORDERED that the said Clerk of this Court do spread this order upon the record of this Court *and that the transcript of evidence and the exhibits be filed by the said Clerk in this office and in said Court as of this date."* (Italics supplied.)

The portion of the court order which has been quoted above discloses that a transcript of the trial proceeding was made and duly certified by the official court reporter and filed with the court in conformity with the requirements of R.C.P. 80. That counsel for the landowners had knowledge of these facts is evidenced by his signature by which he signified his approval of the order in which the facts were recited. We are of the opinion that, in the circumstances of this case, there was a sufficient compliance with the requirements of R.C.P. 80 and that the transcript of the trial proceedings was properly made a part of the record before this Court. For reasons previously stated in this opinion, the motion to dismiss the writ of error and supersedeas is overruled.

Counsel for the landowners filed in this Court a motion to strike the brief of counsel for the condemner on the

ground that it was not timely filed in compliance with the requirement of Rule VI of the Rules of this Court. The motion to strike or to suppress the brief was denied. The Court permitted the brief to be filed but denied counsel for the condemner the right to argue the case orally before the Court. The case was submitted for decision upon the record and briefs of counsel but without oral argument by counsel for either party.

Prior to the institution of the eminent domain proceeding involved in this case, Devon D. Curry and Alberta Curry, husband and wife, were the owners of two contiguous lots which constituted a single parcel of land fronting on Division Street in the City of Parkersburg for a total distance of approximately one hundred feet. In the eminent domain proceeding, the condemner took a permanent easement across the entire front of the land with a depth of nineteen feet at one end and twenty feet at the other end. The area of the permanent easement, therefore, was approximately one hundred feet by nineteen feet by twenty feet.

Situated on the entire parcel of real estate were three buildings which fronted on Division Street. A small portion of the front of each of the three buildings extended onto the land upon which the condemner took the permanent easement. In addition to the permanent easement, the condemner took the three buildings by dismantling and removing them from the land on which they had been located. The three buildings stood primarily on the residue of the land which remained after the taking of the permanent easement. The condemner was permitted in the eminent domain proceeding to acquire also a temporary easement which embraced virtually all of the land remaining after the taking of the permanent easement and the three buildings. The land embraced by the temporary easement was used by the condemner for approximately two years in connection with the construction of the highway. The verdict represented the jury's finding of just compensation properly due the landowners

for the land taken as a permanent easement, for the three buildings taken and for the temporary easement.

The petition for a writ of error and supersedeas contains numerous assignments of error. In the brief of counsel for the condemner, the assignments of error are summarized under three headings. The assignments of error thus summarized relate primarily to the contention that the trial court erred by its rulings upon the introduction of testimony during the trial and in the giving and in refusing to give certain instructions. In this connection counsel contends that the trial court erred in allowing the buildings taken to be valued separately from the land upon which the buildings had been located.

Following is a statement of the general rule relating to proof in eminent domain proceedings of the market value of land which includes improvements such as buildings: "In condemnation proceedings the value of improvements on the land taken may not be proved or shown separately and apart from the value of the land." *The Chesapeake and Ohio Railway Company v. Johnson,* 134 W.Va. 619, 627, 60 S.E.2d 203, 208. To the same general effect, see *Strouds Creek and Muddlety Railroad Company v. Herold,* 131 W.Va. 45, 45 S.E.2d 513; *City of Chicago v. Callender,* 396 Ill. 371, 380-81, 71 N.E.2d 643, 648-49; 27 AM. JUR. 2d, *Eminent Domain,* Section 291, pages 94-99; Annot., 1 A.L. R.2d, pages 878-905. The general rule was similarly stated in the third point of the syllabus of *Wheeling Electric Company v. Gist,* 154 W.Va. 69, 173 S.E.2d 336, as follows:

"The separate value of different elements of property condemned such as the value of minerals, timber and surface is inadmissible in evidence to prove the market value of the property taken, but such different elements contained in, on or under the land or property taken may be considered by competent or qualified witnesses in arriving at the market value of the property taken."

The Court, in this case, adheres to and reaffirms the correctness of the general rule as stated in prior decisions

of this Court and other authorities listed immediately above. That is, the Court continues to adhere to the general rule that, in eminent domain proceedings, buildings or other improvements which constitute a part of the land taken should not be valued separately from the land itself, but rather the true market value of the land taken should be regarded as the true market value of the land as enhanced by the value of the buildings or other improvements which are an integral part of the land taken. The Court is of the opinion that the trial court did not commit reversible error to the extent that it may have varied or departed from the general rule in the light of the unusual facts and circumstances involved in the trial of the eminent domain case.

The general rule is applied in cases in which the buildings or other improvements are a part of the land taken, with the result that the land taken and the improvements thereon constitute a unit. Buildings or other improvements, being a part of the land, necessarily enhance the value and constitute a part of the value of the land taken. We are not aware of any court decision or other statement of the general rule which would be applicable to a case in which the land taken and the buildings or other improvements are separate from each other.

In the present case, only a minor portion of the front of each of the three buildings extended onto the land actually taken as a permanent easement. The buildings and the land taken, therefore, could not be said to constitute an integrated unit. It is unrealistic to assume that the small portions of the three buildings added anything whatsoever to the market value of the land taken.

The landowners did not assert or claim damages to the residue of their land beyond all benefits accruing from the highway construction. They waived any right they may have had to assert damage to the residue of their

land. If they had asserted such a claim, it would have been unrealistic and perhaps impossible for them to have established any damage resulting to the residue by the taking and removal of the mere portions of the three buildings which would have remained after the taking of the front portions thereof as a part of the permanent easement acquired in the eminent domain proceedings. It is reasonable to assume that the condemner acquired the buildings in their entirety because it was recognized that the actual taking of the front portions thereof would virtually or wholly destroy the buildings for any useful purpose and leave them valueless.

The landowners were permitted by the trial court to recover the fair market value of the land actually taken and the fair market value of the three buildings to the extent that the buildings, according to the testimony, enhanced the fair market value of the entire parcel of land immediately before the condemner entered into possession pursuant to the order of the trial court. This constitutes the essence of the true measure of damages where land improved by buildings is taken by eminent domain.

The condemner contends that certain testimony of three witnesses for the landowners was prejudicial because they valued the buildings separately and apart from the land. One of these three witnesses, B. Y. Chalfant, a real estate broker in Parkersburg, West Virginia, testified as follows:

"Q. What, in your opinion, Mr. Chalfant, was the fair market value of this Curry land and the three buildings later removed therefrom, as of July 28, 1966, immediately before the take?

* * *

"A. The way I had figured that is in the neighborhood of $55,000 for the entire package except that garage apartment, that's true.

"Q. In your opinion, Mr. Chalfant, by what amounts, if any, was the fair market value of this

Curry land increased or affected by the existence thereon of the three buildings later removed therefrom, as of July 28, 1966, immediately before the taking?

\* \* \*

"A. I figured it to be in the neighborhood of $37,800."

Mr. Chalfant testified further concerning the fair market value of the land taken and the fair market value of the residual portion of the land both before and after the taking by the State Road Commission. His testimony was substantially identical in form and substance with the testimony of the other two witnesses who testified in behalf of the landowners.

In the light of the testimony and the circumstances of the case, the trial court, over the objection of counsel for the condemner, gave and read to the jury Defendant Landowners' Instruction No. 1, which was as follows:

"It is provided in and by the Constitution of West Virginia that private property shall not be taken or damaged for public use without just compensation, and, accordingly, you are instructed to ascertain what will be a just compensation to the defendant landowners for their real property actually taken by the State for public use in this proceeding, viz., the tract of 1,950 square feet taken permanently, the three buildings partially situated thereon which were taken and removed and the loss of the use of the tract of 7,860 square feet during the period of time that it was taken temporarily for highway construction purposes, such just compensation being the fair market value of the tract of 1,950 square feet and the three buildings partially situated thereon so taken as of the time they were taken and, also, the fair market value of the use of the tract of 7,860 square feet during the period of time that it was so taken temporarily and such value you shall ascertain from the evidence without diminution by reason of benefits, if any, to the residue of the real property owned by the defendant landowners, Devon D. Curry and Alberta Curry, his wife."

We are of the opinion that the instruction quoted above substantially conforms to the legal principles properly applicable to this case, and that the trial court did not commit reversible error in submitting the case to the jury for decision on the basis of the principles stated in that instruction.

We have considered other assignments of error urged in behalf of the condemner and are of the opinion that they embody no basis of reversible error.

For reasons stated in this opinion, the judgment of the Circuit Court of Wood County is affirmed.

*Affirmed.*

HAYMOND, JUDGE, dissenting:

I concur in the action of the majority in denying the motion of the defendant landowners to dismiss as improvidently awarded the writ of error and supersedeas granted by this Court on June 8, 1970; but I emphatically dissent from the holding of the majority as set forth in Point 6 of the syllabus which permits the buildings and the land on which the permanent easement taken in this proceeding is located to be valued separately in violation of the well established general rule expressly recognized but completely violated by the majority, that the land and the buildings or improvements on it must be valued as a unit and not separately.

Strange and incredible as it may seem, the majority states that it adheres to and reaffirms the general rule as stated in prior decisions of this Court and other authorities, that in eminent domain proceedings buildings or other improvements which constitute a part of the land taken should not be valued separately from the land but must be valued as a unit, and then proceeds erroneously and without any necessity or justification whatsoever to violate the rule completely and to permit the buildings on the easement to be valued separately from the value of the land. I can not subscribe to such fallacious, fruitless,

inconsistent and erroneous violation of a rule which it states that it adheres to and reaffirms.

The majority apparently, but unsuccessfully, attempts to justify this almost unbelievable action, and to differentiate it from cases in which the rule has been uniformly recognized and applied, on the ground that only a part of the buildings was located upon the land covered by the easement taken. There is no merit in that position; and there is no difference in law or logic or principle or indeed common sense, between a building which is partly located on the land when, as here, the entire building is taken with the land, and a situation in which the building is located entirely upon the land taken as in the case of *The Chesapeake and Ohio Railway Company v. Johnson,* 134 W.Va. 619, 60 S.E.2d 203.

The majority cites that case and then proceeds to do what that case says may not be done, namely, to permit the value of improvements on the land to be proved and shown separately from the value of the land. In that case, which is controlling with respect to the question here involved of the proof of the value of the land and the building as a unit, this Court, citing numerous well recognized authorities, said: "In condemnation proceedings the value of improvements on the land taken may not be proved or shown separately and apart from the value of the land."

In *Strouds Creek and Muddlety Railroad Company v. Herold,* 131 W.Va. 45, 45 S.E.2d 513, also cited in the majority opinion but clearly not followed or adhered to in principle, this Court held in Point 8 of the syllabus that: "In a condemnation proceeding to take land which contains coal as to which there has been no severance of title, evidence offered by the landowner of a separate value of the land apart from the coal and of a separate value of the coal is inadmissible for the purpose of establishing the market value of the land."

In the recent case of *Wheeling Electric Company v. Gist,* 154 W.Va. 69, 173 S.E.2d 336, the opinion contains this

language which is here directly applicable: "It has been repeatedly held that the itemizing or listing of the separate value of different elements of property condemned such as the value of minerals, the value of timber and the value of the surface is inadmissible in evidence to prove the market value of the property taken. 29A C.J.S., *Eminent Domain*, § 136 (8) ; 27 AM. JUR. 2d, *Eminent Domain*, § 311; *Strouds Creek and Muddlety Railroad Company v. Herold, et al., supra; Chesapeake and Ohio Railway Company v. Johnson, et al., supra; Chairman of Highway Commission of Virginia v. Fletcher*, 153 Va. 43, 149 S.E. 456."

Under the foregoing authorities which the majority says it recognizes but which in fact it disregards, the evidence of the separate value of the buildings which were destroyed or taken in their entirety by the applicant was inadmissible and the action of the majority in holding it to be admissible is clearly erroneous and is completely contrary to and violative of the general rule recognized and applied in the above cited prior decisions of this Court and which is supported by the weight of authority generally. Not only is the holding of the majority violative of and inconsistent with the general rule recognized and applied in such cases, but Points 5 and 6 of the syllabus are in irreconcilable conflict with each other.

Point 5 of the syllabus states without qualification the correct rule, that in the trial of a proceeding in eminent domain when the land taken has been improved by buildings upon it the land and the buildings must be considered as a unit and it is improper to prove separately the value of the land taken and the buildings located on it, whereas Point 6 of the syllabus states that it is not reversible error to permit the land and the buildings to be valued separately in the so-called unusual circumstances in which a portion of a building only, though the entire building is taken with the land, is located on the land. This conflict is not only unnecessary and unwarranted but is also unprecedented. I know of no previous decision of this Court in

which it expressly adheres to and reaffirms a general rule and then permits its complete violation.

It is significant that the majority cites no authority, and there is none, to support its position that, as only a portion of the building, which is taken in its entirety is located on the land taken, the general rule which requires the land and the buildings to be valued as a whole and not separately, does not apply.

Instead of according evanescent lip service to the general rule and then departing from it, and instead of creating an unsupported anomaly with respect to the proof of the market value of land improved with buildings, the majority should have followed the holding in *The Chesapeake and Ohio Railway Company v. Johnson,* 134 W.Va. 619, 60 S.E.2d 203, which is exactly in point, is indistinguishable from and is controlling of the decision in this proceeding, and should have held the evidence of the separate value of the buildings inadmissible, and because of the prejudicial error in admitting such evidence, should have reversed the judgment of the circuit court.

The decision of the majority is not only contrary to the prior decisions of this Court but it disregards the doctrine of *stare decisis* that a principle of law which has become settled by a series of decisions is generally binding upon the courts and should be followed in similar cases. 21 C.J. S., *Courts,* Section 187. See *Lyon v. Grasselli Chemical Company,* 106 W.Va. 518, 146 S.E. 57. See also *Clarke & Co., v. Figgins,* 27 W.Va. 663. *Stare decisis* is a salutary rule, is entitled to great weight and ordinarily should be strictly adhered to by the courts especially where a different ruling would work injustice to litigants. 21 C.J.S., *Courts,* Section 187. In *In The Matter of: Proposal to Incorporate the Town of Chesapeake,* 130 W.Va. 527, 45 S.E.2d 113, this Court, quoting from BLACK'S LAW DICTIONARY, 3d Ed., said: "The doctrine of *stare decisis* rests upon the principle that law by which men are governed should be fixed, definite, and known, and that, when the

law is declared by court of competent jurisdiction authorized to construe it, such declaration, in absence of palpable mistake or error, is itself evidence of the law until changed by competent authority."

In my judgment, any unwarranted departure from the doctrine of *stare decisis* such as the majority has effected by the decision in this proceeding in disregarding though not overruling the decisions in *The Chesapeake and Ohio Railway Company, Strouds Creek and Muddlety Railroad Company* and *Wheeling Electric Company* cases, produces conflict, uncertainty and confusion in the reported decisions of this Court on the question involved and such decisions will not be regarded with respect or as reliable authority. At best, the law is a complex system of government and the proper application of its principles in the determination of the questions constantly arising in countless controversies, is fraught with difficulty. For that reason, the Court should strive to attain uniformity in decisions which involve the same or similar questions. This can only be achieved by careful consideration of and adherence to prior decisions in which such questions have been carefully considered and resolved.

Because the ruling of the majority in this proceeding, erroneously holding that the evidence of the separate valuation of the buildings is admissible, violates the general rule and is contrary to the prior decisions of this Court on that question, I would hold such evidence to be inadmissible and reverse the judgment of the circuit court.